ATLAS NATIONAL BANK *vs.* WILLIAM SAVERY & others.

Suffolk. March 14. — May 12, 1879. MORTON & ENDICOTT, JJ., absent.

FREEMAN'S NATIONAL BANK *vs.* WILLIAM SAVERY & others.

Suffolk. March 19, 20, 1878. — June 27, 1879. AMES & MORTON, JJ., absent.

A national bank which purchases a promissory note from an indorsee may maintain an action thereon in its own name against a prior party thereto, without regard to the question whether the purchase was one which it was authorized by law to make.

L, a member of the firm of S. & Sons, and also of the firm of P. & Co., made in his own name two promissory notes, payable to the order of the latter firm,

and indorsed the name of the firm of S. & Sons upon them, in fraud of that firm, D., a member of the firm of P. & Co., indorsed the name of his firm upon the notes as first indorsers. Both notes were presented to a bank, before maturity, for discount, the one by a broker, and the other by D., who was known to the officers of the bank to be a member of the firm of P. & Co. The bank discounted both notes. *Held*, in actions on the notes by the bank against S. & Sons, as second indorsers, that neither the form of the notes, nor the fact that one was presented by a broker, nor the fact that the other was presented by D., was conclusive notice to the bank, as matter of law, of the invalidity in the indorsements.

TWO ACTIONS OF CONTRACT against the members of the firm of John Savery's Sons.

THE FIRST CASE was on three promissory notes, each dated in 1877, signed by Alexander Law, payable to the order of Charles F. Parker & Co., and having on the back, first, the name of the payee, and then that of " John Savery's Sons."

At the trial in the Superior Court, before *Putnam*, J., the evidence as to the making of the notes and their fraudulent indorsement by Law, and as to his being a partner in both firms, was similar to that in the case of *National Bank of Commonwealth* v. *Law*, *ante*, 72. It also appeared that the plaintiff bought the notes of a broker at its place of business before maturity; and there was evidence that none of the officers of the plaintiff bank had knowledge that Law was a member of either firm.

The defendant requested the judge to rule as follows : " 1. The plaintiff under its corporate powers had no right to purchase these notes. 2. From the mere form of the notes themselves, the bank was charged with notice that the notes were made for Law's accommodation, in fraud of the firm. 3. The plaintiff cannot maintain this action, if, at the time the bank took the notes in suit from the broker and paid its money for them, it had notice or knowledge that they were contracted and issued for the private use of Law, or if the circumstances, under which it took the notes and paid the money therefor, were such as to authorize an inference of its knowledge, or such as ought to have put it on inquiry as to the real character of the transaction, unless the plaintiff satisfies the jury that the indorsement of John Savery's Sons was made with their knowledge and consent, or that the notes were indorsed by them in the ordinary course of the business of the firm."

The judge declined to instruct the jury as requested; but instructed them that the plaintiff had a right to purchase notes in the manner these notes were purchased; that the form of the notes was not sufficient, as matter of law, to charge the plaintiff with notice; but the jury might take any fact appearing on the face of the notes, or otherwise known to the plaintiff, into consideration, in determining whether it had notice or was put on inquiry; and that, if the plaintiff purchased the notes in good faith without notice of the fraud, it was entitled to recover.

The jury returned a verdict for the plaintiff; and the defendants alleged exceptions.

*E. Avery* for the defendants.

*R. M. Morse, Jr.,* for the plaintiff.

LORD, J. The question as to the plaintiff's title to the notes is fully settled in the case of *Pemberton National Bank* v. *Porter,* 125 Mass. 333, and with that decision we are satisfied. If we assume that a national bank cannot purchase a note, as contended by the defendants, that contract of purchase is entirely independent of the executory contract which the plaintiff is seeking to enforce; and whether the plaintiff is holding the note for itself or for another is wholly immaterial to the defendants, unless it shall appear that it is holding the note for some one who could not enforce it against the defendants, of which there was no evidence nor presumption, nor was the question made at the trial.

The notes were obtained by the plaintiff in the market, with no evidence that the party from whom they were obtained was not a *bona fide* holder of them for value. The fact that the party from whom they were obtained was a broker, if from that fact it is to be inferred that he was not the owner, raises no presumption that he was an agent of Law for the negotiation of the notes. If any presumption could arise from that fact that he was the agent of any party to the notes, it would be that he was agent of the last indorser of the notes. But we think that the mere fact that he was a broker authorizes no presumption as to the ownership, other than that which the possession and power of disposition implies.

The argument of the defendants' counsel was based upon the fallacy that the broker of whom the notes were obtained was the

mere representative of Law, of which there was no evidence, and
the presumption, so far as there was any, was otherwise.

*Exceptions overruled.*

THE SECOND CASE was on a similar promissory note, dated
December 20, 1876.

At the trial in the Superior Court, before *Colburn*, J., the
same facts appeared as in the first case, except that the note in
this case was brought to the plaintiff bank by Charles H. De-
merritt, a member of the firm of Charles F. Parker & Co., and
known to the plaintiff to be such member, by whom the indorse-
ment of that firm's name was made.

The judge ruled that the plaintiff was, as matter of law, affected
with notice of the defence existing to the note on the part of the
defendants other than Law, and ordered a verdict for them.  The
plaintiff alleged exceptions.

*W. G. Russell & H. M. Rogers*, for the plaintiff.

*E. Avery*, for the defendants.

COLT, J.  The defendants, partners doing business under the
name of John Savery's Sons, are sued as second indorsers of a
note made by Alexander Law, payable to the order of C. F.
Parker & Co., and by them indorsed in blank.  Law, at the
time the note was made and negotiated, was a member of the
firm of C. F. Parker & Co., and also of the firm of John Savery's
Sons.  It is agreed that the name of the defendants' firm was
indorsed on the note by Law, without the knowledge or consent
of the other partners, and in fraud of the rights of the firm.
The name of the firm of C. F. Parker & Co. was indorsed by
Charles H. Demerritt, a member of the firm, who, before its
maturity, offered it to the plaintiff bank for discount.  The note
was at once discounted by the bank on the credit of the parties
to it, and the avails paid to Demerritt.  The bank had no knowl-
edge or notice that the partnership name of the defendant's firm
was indorsed on the note by Law without the authority and in
fraud of the other members of the firm, other than what is to be
inferred from the form of the note, or the facts above stated.

It is contended that the fact that the note was signed by Law,
indorsed in the name of the defendant's firm by him, and then
discounted for Demerritt, who was a member of the firm of
C. F. Parker & Co., payees and prior indorsers, was conclusive

notice to the bank that the defendants were accommodation indorsers and sureties; and that, in the absence of proof that the signature of the firm name by Law was authorized, or ratified by the other members of the firm, all the defendants except Law, are entitled to a verdict in their favor.   This is the only question for our consideration.

It is settled that one who takes a negotiable promissory note for value, before maturity, in good faith, and without knowledge of any defect of title, may recover upon it, although facts are offered in evidence which impeach its validity between antecedent parties.   A suspicion that there is a defect of title, or a knowledge of circumstances which might excite suspicion in the mind of a cautious person, or even gross negligence, not amounting to evidence of fraud, or bad faith, will not defeat the title of the purchaser.   *Goodman* v. *Simonds*, 20 How. 343.   *Murray* v. *Lardner*, 2 Wall. 110.   *Hotchkiss* v. *National Banks*, 21 Wall. 354, 359. The rule has been often approved by this court.   *Spooner* v. *Holmes*, 102 Mass. 503.   *Smith* v. *Livingston*, 111 Mass. 342.

When the defect or infirmity of title to the bill or note, however, appears on its face at the time of the transfer, it was said in *Goodman* v. *Simonds* that the question whether a party who took it had notice or not, was a question of construction, and must be determined by the court as a matter of law; as, where a person, who took a bill which upon its face appeared to be dishonored, was held not to have the rights of a *bona fide* holder; *Andrews* v. *Pond*, 13 Pet. 65; or where one taking a note so marked as to show for whose benefit it was to be discounted was presumed to have knowledge of what the note imported.   *Fowler* v. *Brantly*, 14 Pet. 318.   *Brown* v. *Taber*, 5 Wend. 566.   A party must be presumed to know the contents and true meaning of a written instrument which he takes as evidence of title, or of contract, and, when it is in the form of negotiable commercial paper, to know the construction which must be given to it, with reference to the time when it is transferred to him, and the order of the several names then upon it.   *National Bank of Commonwealth* v. *Law*, ante, 72.   If the attempt is to impeach the title by facts accruing between other parties, independent and outside of the instrument itself, the question whether the purchaser had knowledge of them is a question of fact for the jury,

to be proved by showing that they were directly communicated to him, or by proof of circumstances from which notice must be presumed.

Upon the face of the note in this case, there is nothing which indicates any irregularity or invalidity in the origin or negotiation of it. It represents a regular business transaction, between Law, the maker, and C. F. Parker & Co., and between C. F. Parker & Co. and John Savery's Sons. The presumption is that it passed from one party to another for a good consideration, and that the firm names of the two partnerships were indorsed in the course of the regular business of the firms. The fact that Law was a member of both partnerships, and wrote the name of John Savery's Sons as last indorsers, does not require us to infer that the paper was prepared by him in order to defraud his copartners. Because he was a member of each firm, he was not thereby deprived of the authority to sign the name of either or both, in the regular business of each; nor were the firms thereby prevented from dealing with each other. The fact cannot of itself vary the rules which govern these transactions, and which are necessary for the free transfer of negotiable paper and for the protection of innocent parties, who take without notice, for value. Thus in *Wait* v. *Thayer*, 118 Mass. 473, the individual note of the partner, indorsed with the name of the firm of which he was a member, was presented to the plaintiff by him for discount, and was then filled in with the date and rate of interest. It was held that these facts did not raise any conclusive presumption that the indorsement was an accommodation indorsement of the firm, or that the maker received the money for his own private use, and not as copartner; and that the court could not therefore properly rule that the form of the note, and the fact that it was in the maker's hands, were conclusive proof that it was indorsed for his accommodation.

In *Miller* v. *Consolidation Bank*, 48 Penn. St. 514, it was decided that one who is a member of several firms may draw and indorse the same paper as the representative of each, and it is no ground of suspicion that his indorsement of the name of one firm is in bad faith to another, or to the maker of the note. *Ihmsen* v. *Negley*, 25 Penn. St. 297. *Parker* v. *Burgess*, 5 R. I. 277. *Moorehead* v. *Gilmore*, 77 Penn. St. 118.

But the chief reliance of the defendants is on the proposition that because the note was discounted for Demerritt, a member of the firm of C. F. Parker & Co., the prior indorser, the firm of John Savery's Sons must be treated as an accommodation indorser. The possession of a note by the maker who offers it for discount is of itself, it is said, notice that the note, if ever before negotiated, has been paid by the maker, or that, if not before negotiated, the indorsements are for his accommodation. And so if discounted for the payee, or the avails paid to him, it is evidence that subsequent indorsements were for his accommodation.

The difficulty with the defendants' position is, that there is nothing in the facts agreed which conclusively proves that the plaintiff discounted this note for the firm of C. F. Parker & Co., or knew that they were to have the avails of it. The fact that it was presented by a member of that firm, and that the avails of the discount were paid to him, must be taken in connection with the fact that the indorsements then on the note plainly indicated that the firm of which he was a member had parted with all interest in it to the defendant firm, and that he held it individually by blank indorsement from them. The inference is quite as natural that Demerritt was the owner of the note, and procured its discount for himself, because to construe it as a discount for the firm would be to impair the validity of the last indorsement, and defeat the legal presumption in its favor.

The court having ruled that the plaintiff was, as matter of law, affected with notice of the defence existing to the note on the part of the defendants other than Law, the entry is

*New trial ordered.*