NATIONAL SECURITY BANK *vs.* JOHN McDONALD & another.

Suffolk.   March 21, 1878. — June 27, 1879.   AMES & MORTON, JJ., absent.

A., the second indorser of a promissory note made by B., payable to his own order and by him indorsed, procured it to be discounted by a bank, and, at the same time and as part of the same transaction, delivered to the bank, as collateral security for the note then discounted, a note payable to A., signed in the firm name of a partnership by one of the partners without the knowledge and in fraud of the firm, and given to A. as security for the note of B., which had been previously obtained by A. from the firm, and had been passed by him to C., the president of the bank, as security for a loan from C., and was in the possession of the latter at the time it was discounted.   On the back of the note of the firm at the time it was delivered to the bank was a memorandum signed by A. stating that the note was held by him as security for the note of B.   Both notes were dated on the same day, were for the same amount, and were payable at the same time.   The bank had no knowledge of the dealings between A. and the firm.   *Held,* in an action by the bank against the firm on the note of the latter, that the bank was charged with notice that the note in suit was given as security only for the payment of the note of B.; and that the action could not be maintained against all the members of the firm, without proof that the note was given with their consent, or in the regular course of the partnership business.

CONTRACT against John McDonald and Thomas McDonald, copartners under the firm name of McDonald Bros., on a promissory note dated Boston, January 11, 1877, for $712.87, payable three months after date to the order of J. O. Kent, and signed by the firm name of the defendants.   On the back of the note was the following memorandum signed by Kent: " This note is held by me for note signed by John Grimes, payable at Woonsocket National Bank, R. I., dated January 11, 1877, 3 mos."  Trial in the Superior Court, before *Colburn*, J., who allowed a bill of exceptions in substance as follows:

About January 15, 1877, Kent, the indorser of the note in suit, took from the defendants a note for $712.87, dated Woonsocket, R. I., January 11, 1877, signed by John Grimes, payable to his own order three months after date and indorsed by him, and told them he would get it discounted, and pay them therefor $400 in money, and the balance in ale.   Some time before February 6, 1877, Kent took the Grimes note to Samuel A. Carlton, president of the plaintiff bank, and procured from him individually a loan of $200 upon it.   On February 6, 1877, Kent went to Carlton and

represented to him that he had a note given by the defendants, of like tenor with the Grimes note, which he held as collateral security for that note, and that he could deliver it to Carlton or the bank, to hold as collateral security, if the Grimes note was discounted. Relying upon this promised collateral security, Carlton took the Grimes note, which had then been indorsed by Kent, indorsed it himself, and had it discounted by the plaintiff bank. About February 16, 1877, Kent carried the note in suit to Carlton as the collateral note he had promised, and Carlton passed it to the bank to hold as collateral security for the Grimes note. The amount of the note, less the discount and $200 previously advanced, was paid over to Kent. It did not appear that Carlton, or any officer of the plaintiff bank, had any knowledge of the manner in which Kent obtained the notes, or of the dealings between him and the defendants.

There was evidence that on February 16, 1877, Thomas McDonald, one of the defendants, went to the office of Kent, and signed the note in suit, in the firm name, receiving at the same time from Kent $200 in money, and a receipted bill for $170 for ale, previously delivered by Kent to the defendants, Kent saying, "that he wanted this note, so that, if there was any trouble about the Grimes note, he could have something to look to." Thomas McDonald testified that the $200 and the receipted bill were not in consideration of the note in suit. Kent made the memorandum on the note in suit before he handed it to Carlton. John McDonald testified that he had no knowledge of the note in suit until after it became due; that Thomas had no right to give it in the name of the firm, and that the firm had no consideration for it. The Grimes note was not paid when it became due, and was duly protested.

This action was brought on April 16, 1877, and on April 23, 1877, Carlton paid the plaintiff bank the amount due on the Grimes note, and this suit is now prosecuted for his benefit.

The defendants did not controvert the facts above stated, in relation to the transaction between Kent, Carlton, and the plaintiff bank, or contend that there was any evidence that Carlton or the bank had any knowledge of the dealings between Kent and the defendants in relation to the notes, except such as they had, or might have had, from the writing on the note in suit.

The judge ruled that neither the bank nor Carlton was affected by any of the transactions, as above stated, between Kent and the defendants, and that the action could be maintained by Carlton in the name of the plaintiff; and ordered a verdict for the plaintiff. The defendants alleged exceptions.

*J. Nickerson*, for the defendants.

*S. J. Thomas*, for the plaintiff.

COLT, J. The defence in this case is, that the note in suit was given by one partner in fraud of the partnership, without consideration, and outside the partnership business.

There was evidence tending to show that the note was given by Thomas McDonald without the knowledge of the firm, for the purpose of giving to Kent security for the Grimes note, which had been previously obtained by him from the firm, and had been passed out of his hands into the possession of Carlton, as security for a loan of $200. It was not contended that the bank had any knowledge of the dealings between Kent and the defendants, except such as it had from the face of the two notes, and the memorandum written upon the one in suit. But we are of opinion that the knowledge thus derived was sufficient to charge the bank with notice that the note in suit was given as security only for the payment of the Grimes note. Both notes were dated on the same day, were given for the same amount, and were made payable at the same time. The memorandum on the back of the note in suit, which was taken by the bank when the Grimes note was discounted, necessarily conveyed the information that the note then discounted represented a debt due from Grimes to Kent; and that the note in suit was made and delivered by the firm to Kent, as security only for the payment of the Grimes note. It is plain from the writings alone that, upon the payment of the Grimes note, Kent would have no valid claim against the firm upon the note in suit. The bank was bound to take notice of the contents of the notes received by it as securities for the loan then made. *Freeman's National Bank* v. *Savery, ante,* 78.

It follows that the plaintiff bank cannot be considered as a holder for value, without notice of the alleged existing infirmity in the origin of the note. In order to charge all the members of the firm upon the facts thus brought to its knowledge, the burden

is on the bank to show that the note was given with the consent of all the partners, or in payment of a debt contracted in the course of the partnership business.

It could not be properly ruled, as matter of law, that the plaintiff was entitled to a verdict against both defendants.

*Exceptions sustained.*