ELBRIDGE STIMSON *vs.* AUSTIN WHITNEY & others.

Worcester. Oct. 12, 13, 1880. — April 8, 1881. COLT, MORTON & FIELD, JJ., absent.

If partners, after a voluntary dissolution of the partnership, of which no notice is given, continue business in the same manner as before, and hold themselves out to the world as partners, the rights of persons dealing with them in good faith are to be determined as if the partnership still existed.

It is within the general scope. of the authority of a member of a trading partnership, engaged in the buying and selling of merchandise, to give or indorse a promissory note in the name of the firm; and a clause in the articles of copartnership, forbidding such an act without the assent of the other partners, does *not affect the rights* of a person taking a note so signed or indorsed in good faith and in ignorance of such a restriction.

A member of the firm of B. & Co. made a promissory note in the firm name payable to the order of W. & Co., and gave it to W., a member of both firms, who indorsed the firm name of W. & Co. upon it in fraud of that firm, and negotiated it. *Held,* in an action upon the note against the members of the firm of W. & Co., that there was nothing upon the face of the note, which, as matter of law, was conclusive notice to the plaintiff that the indorsement of W. & Co. was invalid, or that their indorsement was for the accommodation of B. & Co., although the plaintiff knew that W. was a member of both firms.

ENDICOTT, J. This action is brought on several promissory notes, dated in March, April, May and June, 1876, signed by J. W. Bragdon, Jr. & Company, and indorsed by A. Whitney & Company.

It is contended by the plaintiff that George S. Winslow and others doing business under the firm name of Winslow Brothers, and Austin Whitney, who are the defendants in this action, composed the firm of A. Whitney & Company. Whitney was defaulted, and one question at the trial, upon which much evidence was introduced, as reported in the bill of exceptions, was whether Winslow Brothers were partners as to third persons in the firm of A. Whitney & Company, when the indorsements were made.

The notes were signed by J. W. Bragdon, Jr., of the firm of J. W. Bragdon, Jr. & Company, of which firm Whitney was also a member. Whitney indorsed the notes in the name of A. Whitney & Company, and, having them in his possession, procured the indorsement of the plaintiff upon them as accommodation indorser. The plaintiff, having been obliged to pay

the notes, seeks in this action to recover of Winslow Brothers, as members of the firm of A. Whitney & Company, the amount so paid.

The evidence reported, so far as material to the question raised, tended to establish the following facts: In 1866, the plaintiff and Whitney were the owners of a tannery and finishing shop in Ashburnham, in which the plaintiff carried on the business of tanning, and Whitney, under the name of A. Whitney & Company, the business of finishing leather. During the same year, the Winslow Brothers, being desirous of engaging in business with Whitney at Ashburnham, purchased of the plaintiff his interest in the shop and fixtures, and took a conveyance to themselves as copartners under the name of Winslow Brothers. They then formed a copartnership with Whitney, by an oral agreement, under the name of A. Whitney & Company, and engaged in the business of tanning and finishing leather at Ashburnham, dividing the profits equally between them until September 1, 1871. Whitney attended to the business in Ashburnham and forwarded the finished leather to Winslow Brothers in Boston. In 1869, the terms of the copartnership were reduced to writing, and the copartnership was continued under these articles until September 1, 1871. The case finds that the plaintiff knew of the existence of the copartnership, and who composed it, under the name of A. Whitney & Company. The articles provided that neither party should contract any debt or make or indorse any notes without the assent of the others.

During this period, Winslow Brothers made advances of money and materials to the firm of A. Whitney & Company, and, on September 1, 1871, the balance due Winslow Brothers from the firm was $17,903, and the property belonging to A. Whitney & Company at that date, independently of the mill and machinery, amounted to $18,169. Thereupon Winslow Brothers notified Whitney in writing, that they would no longer continue the copartnership, and an agreement was entered into, that Whitney should buy the interest of Winslow Brothers in the property, and pay therefor the said sum of $17,903 in instalments of $1000 per month. No bill of sale was made to Whitney by Winslow Brothers, and no charge of this property was

made on the book of Winslow Brothers to Whitney, and the account against A. Whitney & Company in their books was continued, charging and crediting to that account, as occasion required, in the same manner as they had done before the alleged termination of the copartnership, and the correspondence between them was always conducted in the name of A. Whitney & Company. During this time, Winslow Brothers made advances of money and materials to Whitney, which were charged to the same account. Whitney continued the business at Ashburnham under the name of A. Whitney & Company, and continued to send finished leather to Winslow Brothers, until the balance of $17,903 due from him was thereby paid, some time in 1874. Whitney then agreed to buy the interest of Winslow Brothers in the real estate for $4000, and to finish leather for them in payment. The whole sum was thus paid about April 29, 1876, and Winslow Brothers, at the request of Whitney, conveyed their interest in the real estate to a brother of Whitney, but the deed was not recorded till October 1877. No charge or entry was made upon the books of Winslow Brothers showing this sale, but they continued to charge upon the account of A. Whitney & Company the finishing of leather done by him for them until the sum of $4000 was paid. No public notice was ever given of the dissolution of the partnership, and there was no change in the name of the firm or in the manner of carrying on the business, so far as the public was concerned, and Whitney continued to carry it on at Ashburnham under the name of A. Whitney & Company until his failure in June 1876.

In 1872, the plaintiff began to indorse the notes of A. Whitney & Company at the request of Whitney, and continued to do so from time to time until the indorsements of the notes in suit. These indorsements were made at the request of Whitney; and the plaintiff testified that he indorsed the notes at his request, and upon his representation that Winslow Brothers were holden on the notes, and that they were good; that, at the time of the indorsements, he believed Winslow Brothers were holden upon them, and he never heard till after Whitney's failure that he had bought out Winslow Brothers' interest in the firm. This evidence was contradicted. The bill of exceptions states the evidence introduced by both sides, which it is not important to

recite. There was no evidence that the plaintiff knew that the articles of copartnership between Winslow Brothers and Whitney provided that neither partner should indorse notes without the consent of the others.

Upon the case reported, it would have been for the jury to decide, upon all the evidence, whether, as between the plaintiff and the defendants, Winslow Brothers were partners and liable on the indorsements made by Whitney in the copartnership name in the regular course of business, and within the actual or apparent scope of his authority as partner.

The ruling of the presiding judge to which exception is taken, appears to have been based upon the assumption that, at the time these notes were given, the partnership continued as between the parties to this action, notwithstanding the agreement between Whitney and Winslow Brothers to dissolve their partnership. The ruling was, that, as matter of law, the jury would not be authorized to find that the indorsement of the notes by Whitney in the name of A. Whitney & Company was within the scope of any authority vested in him as copartner with the other defendants ; and that the plaintiff could not maintain his action ; and a verdict was ordered for the Winslows.

Assuming that the partnership continued as to all parties dealing with the firm without knowledge of the dissolution, we are of opinion that this ruling was erroneous. When partners after a dissolution, as between themselves, continue the business in the same manner, and hold themselves out to all the world as partners, giving no notice of the dissolution, the rights of parties dealing with the supposed partnership in good faith, and having no notice of the change, are to be determined in the same manner, and are to be governed by the same rules as if they were dealing with an actual partnership. See *Baring* v. *Crafts*, 9 Met. 380, 392; *Trueman* v. *Loder*, 11 A. & E. 589. The act of one partner under such circumstances may bind the others to the same extent as it would have bound them before the dissolution.

The firm of A. Whitney & Company was a commercial and trading partnership, engaged in buying and selling merchandise, and it was within the general scope of the authority of one member of such a partnership to give or indorse a note in the name of the firm. And where in such a partnership the articles

provide, as in the case at bar, that one partner shall not make or indorse notes without the consent of the other partners, such private restrictions cannot affect those who, without knowledge of them, give credit to the partnership. *Etheridge* v. *Binney*, 9 Pick. 272. *Hayward* v. *French*, 12 Gray, 453. *Warren* v. *French*, 6 Allen, 317. *Blodgett* v. *Weed*, 119 Mass. 215. *Winship* v. *Bank of United States*, 5 Pet. 529, 551, 560. *Kimbro* v. *Bullitt*, 22 How. 256, 266. Story Part. §§ 105, 111, 112, 126.

Nor is there anything upon the face of these notes, which, as matter of law, was conclusive notice to the plaintiff of the invalidity of the indorsement of A. Whitney & Company, or that they were accommodation indorsers, although the plaintiff knew that Whitney was a member of both firms.

In *Freeman's National Bank* v. *Savery*, 127 Mass. 75, Law, the maker of the note, made it payable to the firm of C. F. Parker & Company, of which he was a member, and the name of the firm of C. F. Parker & Company was indorsed thereon by Demeritt, another member of the firm. The name of the firm of John Savery's Sons was without authority indorsed on the note by Law, of which firm he was also a member. The note was discounted at the bank by Demeritt, who was known by the officers of the bank to be a member of the firm of C. F. Parker & Company. It was held that there was no notice to the bank that Savery Sons were accommodation indorsers and sureties. Here, each note apparently represents a regular business transaction, whereby J. W. Bragdon, Jr. & Company had given their note to A. Whitney & Company, and A. Whitney & Company had indorsed it for the purpose of negotiating it. The notes were not necessarily invalid because Whitney was a member of both firms. It was said in *Freeman's National Bank* v. *Savery*, *ubi supra*, that "a suspicion that there is a defect of title, or a knowledge of circumstances which might excite suspicion in the mind of a cautious person, or even gross negligence, not amounting to evidence of fraud or bad faith, will not defeat the title of the purchaser." There was nothing on the face of the note to indicate that the liability of A. Whitney & Company was secondary and conditional, or that they were sureties, as in *National Bank of the Commonwealth* v. *Law*, 127 Mass. 72, and in other cases cited by the defendants.

It was for the jury to determine, upon all the evidence, whether the plaintiff indorsed the notes as accommodation indorser, believing in good faith that the indorsement of A. Whitney & Company was a valid indorsement made by Whitney apparently within the scope of the partnership powers, and without knowledge of any defect therein.

In the conflict of evidence reported and bearing more or less directly on that question, the court cannot decide it, but it should have been left to the jury.

As the presiding judge limited his ruling to the authority of Whitney to indorse the note, and thus to bind the other defendants, the question does not arise here whether the plaintiff believed that the notes were for the benefit of J. W. Bragdon, Jr. & Company. On that point the evidence was conflicting, and it was a question for the jury.                    *Exceptions sustained.*

*G. F. Verry & F. A. Gaskill*, for the plaintiff.

*G. F. Hoar*, (*F. T. Blackmer* with him,) for the defendants.