CENTRAL NATIONAL BANK *vs.* HORATIO B. FRYE & others.

Suffolk.   January 11, 1889. — February 27, 1889.

Present: MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Promissory Note — Partnership — Authority of Partner — Notice — Striking out Indorsement.*

In an action by a bank against copartners upon a note of the firm payable to another firm, which was an ostensible firm only, made by one partner and indorsed by him in both firm names, each of which contained his surname, and discounted by the plaintiff, his copartners set up that he acted without authority, and that the plaintiff had notice that he was using the note for his private purposes, and there was evidence that such partner had no actual authority to sign the name of the firm, and that the proceeds never came to its credit; that the plaintiff had notice that he was the one whose surname was in each firm name, and that he was the only member of the payee firm; that this firm had an account with the plaintiff, the checks against which were habitually made by him; that the plaintiff knew that he made and indorsed the note; that he presented it for discount, which was effected by crediting the proceeds to such ostensible firm's account, from which he afterwards drew them. At the trial, the plaintiff struck out the name of the firm of which the defendants were members as indorser; and the judge ordered a verdict for the plaintiff. *Held*, that the case should have been submitted to the jury; and that the striking out of the firm's name as indorser did not affect its liability as maker.

CONTRACT against the first named defendant, F. M. Libby, and Frank C. Pitcher, upon a promissory note of the following tenor: " $1,388.   Boston, Mass., Sept. 2, 1886.   Four months after date we promise to pay to the order of H. B. Frye & Co. thirteen hundred and eighty-eight dollars at any bank in Boston.   Frye, Libby, & Co."   The note bore the indorsements, " H. B. Frye & Co.," and " Frye, Libby, & Co.," in the order named.

Trial in the Superior Court, before *Sherman*, J., who ordered a verdict for the plaintiff; and the defendants Libby and Pitcher, who alone defended, alleged exceptions.   The facts appear in the opinion.

*W. Gaston & F. E. Snow*, (*F. S. Nickerson* with them,) for Libby.

*M. F. Dickinson, Jr. & W. A. Sargent*, for the plaintiff.

HOLMES, J.   This is an action against Frye, Libby, and Pitcher, copartners under the name of Frye, Libby, & Co.

upon a note signed by Frye with the partnership name, payable to the order of H. B. Frye & Co., and indorsed by him with the name of both firms, which note was discounted by the plaintiff at the request of Frye. Libby and Pitcher set up that Frye acted without authority, and that the plaintiff had notice that Frye was using the note for his private purposes. The court directed a verdict for the plaintiff.

There was evidence that Frye had no actual authority to sign the name of the defendant firm, and that the proceeds never came to the use of that firm. There was also evidence that the plaintiff had notice that the Frye of the two firm names was the same person, and that he was the only member of the ostensible firm H. B. Frye & Co., the payee. H. B. Frye & Co. had an account with the plaintiff bank, the checks against which were habitually drawn by Frye. The plaintiff might have been found to have known that the indorsement H. B. Frye & Co. was in Frye's handwriting, and to have had notice from the handwriting that Frye also made the note. Frye presented it for discount, and the plaintiff discounted it by crediting the proceeds to the account of H. B. Frye & Co., from which they were afterwards drawn out by Frye by checks signed H. B. Frye & Co. The plaintiff understood that the note did not come to Frye's hands after negotiation, and that it only came into existence as a contract when the plaintiff took it.

It thus appears that the jury might have found that the note was made by Frye, payable in substance to his own order, as the plaintiff knew that the proceeds were carried to his private account by the plaintiff bank, and thus that the plaintiff had notice that Frye was using the note for his private purposes, if he was so using it. If these were found to be the facts, a jury would be warranted, at least, in finding that the plaintiff had notice that Frye was exceeding his authority, in the absence of evidence that Frye had a right to use the firm name in this way, or that the plaintiff reasonably believed that he had. *Chazournes* v. *Edwards*, 3 Pick. 5. *In re Riches*, 34 L. J. Bankr. 10, 12 ; *S. C.* 5 New Rep. 287. *Leverson* v. *Lane*, 13 C. B. (N. S.) 278. See *Stimson* v. *Whitney*, 130 Mass. 591, 596 ; *Freeman's National Bank* v. *Savery*, 127 Mass. 75 ; *Wait* v. *Thayer*, 118 Mass. 473, 478.

It is true that the jury might have found that the money went to the use of Frye, Libby, & Co., or that the financial business of Frye, Libby, & Co. was transacted through H. B. Frye & Co., and that the plaintiff so understood that the credit to H. B. Frye & Co. was not a use of the funds for his private purposes by Frye, at least on its face, and that he was simply pursuing an authorized course of business. But these were questions of fact. We therefore are of opinion that it was an error not to allow the defendants to go to the jury.

There was some contradicted evidence that Libby had left the concern of Frye, Libby, & Co. before the note was made. On the question whether, if he had left, due notice was given, evidence was admitted that it was known in the trade, and generally among business men. If the plaintiff had been a previous dealer with the firm and entitled to actual notice, this evidence would not be sufficient, or indeed admissible, under our decisions, to show that it received notice. *Pitcher* v. *Barrows*, 17 Pick. 361, 365. *Goddard* v. *Pratt*, 16 Pick. 412, 419, 433. *Hinckley* v. *Somerset*, 145 Mass. 326, 338. With regard to the public at large, the tendency of the later cases has been to hold that, although publication of notice in a newspaper is a very important circumstance, there is no inflexible rule requiring it, and that general notoriety is a fact to be considered along with other circumstances. *Lovejoy* v. *Spafford*, 93 U. S. 430. But in this case, apart from the doubt whether the firm ever was dissolved in fact, no act of the firm announcing dissolution was testified to by any one, and all that appears, such as keeping on under the old sign, etc., looks the other way. Assuming that the evidence was admissible when offered, we should have hesitated to disturb the ruling of the court on this ground, or to say that, if the plaintiff was not entitled to actual notice, there was evidence of due care to make the change known, as against one that had known the firm as originally constituted, and was actually ignorant of the change. It will be borne in mind, as we have said already, that the evidence of notoriety was no evidence of actual knowledge on the part of the plaintiff.

The striking out by the plaintiff, at the trial, of the indorsement " Frye, Libby, & Co.," did not affect the liability of the same firm as makers. It left their prior contract untouched.

So far as the place of the indorsement tended to show notice to the plaintiff that Frye was using the signature of Frye, Libby, & Co. to increase the account of H. B. Frye & Co., that evidence was still available, and the fact was undisputed. Whether he was doing so rightly, or whether at least the plaintiff had not a right to suppose that he was doing so rightly, was for the jury on all the evidence. But under the circumstances of this case the presence or absence of the indorsement did not affect the question.　　　　　　　　　　　　*Exceptions sustained.*