BACK BAY NATIONAL BANK *vs.* CHARLES E. BRICKLEY & others.

Suffolk.  November 30, 1925. — January 5, 1926.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & SANDERSON, JJ.

*Partnership. Bills and Notes,* Holder in due course, Accommodation paper, Partnership as maker. *Evidence,* Presumptions and burden of proof.

At the trial of an action by a bank against four partners, engaged in the business of stockbrokers, as makers of a negotiable promissory note, it appeared that the name of the firm was signed to the note by one of the partners. The others contended and introduced evidence to show that the note was executed and delivered without their consent

or knowledge and contrary to the provisions of their articles of partnership, and that they were not liable thereon. There was evidence that the note was given to the plaintiff in the course of assisting in the financing of a corporation, and was for the corporation's accommodation, the money being paid to its fiscal agent, and that the officer of the plaintiff who attended to the transaction on its behalf knew these facts. The judge ordered a verdict for the plaintiff. *Held*, that

(1) One partner has no authority to bind the firm as a party to a promissory note, made for the accommodation of another, without authority specifically given him or implied from the course of business of the firm or from the previous course of dealing between the parties; and the partnership is not liable thereon unless the act is afterwards ratified by the other partners;

(2) Those who take such a note with knowledge, either from its appearance or otherwise, that it was made for the separate accommodation of one partner or of another person, cannot recover against the other partners without proving their authority or assent;

(3) It was not proper to rule that there was no evidence which would put a reasonable man upon inquiry as to the authority of the partner who signed the note to bind the remaining three partners as makers;

(4) The question, whether the plaintiff took the note in good faith and without notice of any infirmity therein, or before so doing should have made inquiry respecting the authority of the partner who signed the note, was one of fact which should have been submitted to the jury;

(5) The burden of proving that the plaintiff was a holder in due course rested upon it after there had been introduced evidence that the note was executed and delivered without authority;

(6) It was error to order a verdict for the plaintiff.

CONTRACT against Charles E. Brickley, Warren Ackerman, William J. McGlinn, and J. Russell Butler, "copartners, doing business under the firm name and style of Charles E. Brickley and Company," as makers of three promissory notes, each for $5,000. Writ dated May 4, 1921.

In the Superior Court, the action was tried before *Raymond*, J. Material evidence, rulings by the trial judge, and exceptions saved by the defendants other than Brickley are described in the opinion. By order of the judge, there was a verdict for the plaintiff against all the defendants in the sum of $18,143.61, and the judge reported the action to this court for determination.

*D. J. Lyne*, (*S. L. Kaplan* with him,) for the defendants Ackerman, McGlinn and Butler.

*D. M. Lyons*, for the plaintiff.

CROSBY, J. This is an action brought to recover the amount of three promissory notes, each for $5,000, dated

January 3, 1921, and signed by "Charles E. Brickley &
Co.," payable to the order of the plaintiff and indorsed in
blank by Charles E. Brickley and S. M. Smith.

The partnership of Charles E. Brickley and Company
consisted of Brickley and the defendants Ackerman, McGlinn
and Butler.   The case was tried before a judge of the Supe-
rior Court and a jury and is before us on a report.   It is
conceded that Brickley is liable on the notes.   The question
before us is, whether it could have been rightly ruled that the
other defendants were liable upon the facts presented and
the law applicable thereto.   The report recites that the
judge made the following ruling: "I ruled as a matter of
law that there was no evidence introduced or offered which
would put a reasonable man upon inquiry as to the authority
of the defendant Brickley to bind the remaining three de-
fendants as makers of the notes.   I therefore directed a
verdict for $18,143.61 for the plaintiff against all four defend-
ants with the stipulation as to the three defendants other
than Brickley that if my ruling directing a verdict for the
plaintiff as against them was wrong, or if any of my rulings
or refusals to rule during the trial, excepted to by said three
defendants, injuriously affected the substantial rights of
the said three defendants, in the issues raised by the plead-
ings, final judgment is to be entered for the defendants
Ackerman, McGlinn and Butler; otherwise the plaintiff
to have judgment on the verdict and the verdict as against
the defendant Brickley in any event to stand."

The defendant Brickley, called by the plaintiff, testified
that the four defendants were members of the firm of Charles
E. Brickley and Company which was engaged in the stock
brokerage business; that he signed the notes on behalf of the
firm as maker; that similar notes had been given by the com-
pany to assist in financing the Ziegfield Cinema Corporation,
of which the other indorser, Smith, was the fiscal agent; that
he (Brickley) had assisted in financing that company on
notes similar to those in suit to the extent of about $65,000,
and that the other partners had told him all such notes had
been paid; that the company, in return for services in making
such notes and loans, had received stock of the Ziegfield

Cinema Corporation to the value of $100,000 which was turned over by him to the partnership. There was evidence that none of the other partners knew of the giving of the notes in suit until the partnership was dissolved in March, 1921. Under the partnership articles, it was provided that "Neither the partnership nor any partner on its behalf shall without the written consent of all partners engage in any other business than a strict stock and bond brokerage business in well recognized securities; nor shall the said partnership nor any partner on its behalf without the written consent of all the partners take any share or participate in any syndicate or underwriting or commit the partnership thereto; neither shall the partnership nor any partner on its behalf borrow any money for any purpose unless the same shall be secured by recognized stock exchange collateral sufficient at all times to afford at current market quotations a margin of at least 20 percent." Brickley testified that the notes in suit were not secured by stock exchange collateral.

Arthur L. Potter, called by the plaintiff, testified that, when the notes were taken by the bank, he was its vice-president; that the notes were executed and delivered to him and that Brickley signed them in his presence; that Smith, the other indorser with whom he had negotiated previous transactions relating to the Ziegfield Cinema Corporation, was present; that certificates of deposit were issued to Smith at Brickley's request; that previously to making the loans, representatives of the bank had investigated the financial standing of the members of the firm and had found it to be satisfactory. He further testified that the loans were applied for by Smith two weeks before they were made; that he had not known the partners other than Brickley, and that none of them had ever done any business with the bank; that when Smith applied for the loans he stated that he intended to give the plaintiff a note signed by Charles E. Brickley and Company; that he did not make any inquiry of the partners as to whether Brickley had authority to make the loans although there was ample time to have done so.

The defendant McGlinn, in answer to interrogatories,

stated that Brickley was a general partner in the firm; that in the course of its business it was customary to make loans at banks in the firm name; that it had made loans at banks before the time when the loans in question were made and that all the partners had authority to make loans in the firm name.

It is well settled that a member of a trading or commercial partnership, engaged in buying and selling merchandise, may give or indorse notes in the name of the firm. Where the partnership articles prohibit a partner from making or indorsing notes without the assent of the other partners, such a restriction will not affect those who, without knowledge of it, give credit to the partnership. *Stimson* v. *Whitney,* 130 Mass. 591. Such authority may often be inferred from the nature of the partnership business. *Worster* v. *Forbush,* 171 Mass. 423. Whether in the conduct of a brokerage business by a partnership it is the practice of the firm to borrow money and give notes as security therefor does not appear. Although one of the defendants testified that it was customary for the firm to make bank loans in the firm name, it does not appear that such was a general custom of partnerships engaged in a similar business. In *Worster* v. *Forbush, supra,* it was held that an attorney at law who was a member of a partnership of lawyers had no implied authority to borrow money on the credit of the partnership, nor to sign notes in the name of the firm.

The question to be decided is: Could it properly have been ruled on this record that there was no evidence "which would put a reasonable man upon inquiry as to the authority of the defendant Brickley to bind the remaining three defendants as makers of the notes?"

If, on the undisputed evidence, the plaintiff is a holder in due course, the ruling was right. *Feigenspan* v. *McDonnell,* 201 Mass. 341. "A holder in due course is a holder who has taken the instrument under the following conditions: 1. That it is complete and regular upon its face; 2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; 3. That he took it in good faith and for value;

and 4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." G. L. c. 107, § 75.

There is nothing in the record to show that the three defendants conceded liability at the trial: they stood upon their legal rights, and earnestly contended that the notes were executed and delivered without their consent or knowledge, and were given contrary to the terms of the articles of partnership; and that they were not liable thereon.

The testimony of Potter, the plaintiff's vice-president, that two weeks before the loans were made Smith, representing the Ziegfield Cinema Corporation, applied for the loans and stated that he intended to give the plaintiff a note signed by Charles E. Brickley and Company, and that certificates of deposit for the amount were delivered to Smith, was some evidence that the money was for the accommodation and benefit of the Ziegfield Cinema Corporation and not for the use and advantage of the partnership. The fact that the notes were signed by the firm name by Brickley, in Potter's presence, and were made payable to Brickley's order, tended to show that it was not a transaction in the ordinary and usual course of business. These facts, known to the officer of the bank, were sufficient to put him upon inquiry as to whether Brickley was authorized by the partnership to make the loans on its behalf or whether it was his unauthorized act for the accommodation of the Ziegfield Cinema Corporation. One partner has no authority to bind the firm as a party to a promissory note, made for the accommodation of another, without authority specifically given him, or implied from the course of business of the firm, or from the previous course of dealing between the parties, unless the act is afterwards ratified by the others. *Sweetser* v. *French*, 2 Cush. 309. *National Security Bank* v. *McDonald*, 127 Mass. 82. One partner has no authority without the assent of his copartners to sign the names of the partnership to a note for his individual debt or that of a stranger. Those who take such a note "with knowledge, either from its appearance or otherwise, that it was made for the separate accommodation of one partner or of another person, cannot

recover against the other partners without proving their authority or assent." *National Bank of the Commonwealth* v. *Law*, 127 Mass. 72, 75.   *Harrington* v. *Baker*, 173 Mass. 488.

The circumstances under which the notes were taken by the bank, including their appearance, were such as should have led the plaintiff's vice-president, Potter, to doubt the authority of Brickley to bind the partnership and to have put him (Potter) upon inquiry; if he had made such inquiry he might have found that the notes were not authorized by the partnership.   *Thompson* v. *Hale*, 6 Pick. 259.   *Central National Bank* v. *Frye*, 148 Mass. 498.

The question, whether the plaintiff took the notes in good faith and without notice of any infirmity therein, or before so doing should have made inquiry respecting the authority of Brickley to make them, was a question of fact which should have been submitted to the jury.   It could not properly have been ruled as matter of law that the bank was justified in taking the notes without making any inquiry whatever as to Brickley's authority to sign them on behalf of the partnership.   *Freeman's National Bank* v. *Savery*, 127 Mass. 75, 78. *National Security Bank* v. *McDonald, supra.   Central National Bank* v. *Frye, supra.   Lee* v. *Whitney*, 149 Mass. 447. *Massachusetts National Bank* v. *Snow*, 187 Mass. 159, 163. *Fillebrown* v. *Hayward*, 190 Mass. 472.   *Allen* v. *Puritan Trust Co.* 211 Mass. 409, 423.

In *International Trust Co.* v. *Wilson*, 161 Mass. 80, relied on by the plaintiff, the jury found in answer to special questions submitted to them, that the plaintiff had no knowledge or notice of the limitation of the agent's authority, nor that he was then acting as an agent of the defendant and not as a member of a partnership.   After answering the questions, the jury did not at that time render a general verdict, but afterwards, and before they were discharged, the court directed them to return a verdict for the plaintiff on the findings.   That case is not at variance with the conclusion reached in the present case where it could be found that the plaintiff had knowledge of more than merely suspicious circumstances of an infirmity in the instruments; their appearance and the other facts known to it were such that

it might have been found that the plaintiff had knowledge of such facts that its action in taking the notes amounted to bad faith.

The burden of proving that the plaintiff was a holder in due course rested upon it after evidence had been introduced tending to show that the notes were executed and delivered by Brickley without authority. *Smith* v. *Livingston*, 111 Mass. 342, 344. *Holden* v. *Phœnix Rattan Co.* 168 Mass. 570, 572. *Fillebrown* v. *Hayward*, 190 Mass. 472, 482. *Parker* v. *Roberts*, 243 Mass. 174, 177.

As the verdict for the plaintiff could not properly have been directed, and as the case should have been submitted to the jury, it is unnecessary to consider the exceptions to the exclusion of evidence.

In accordance with the terms of the report, judgment is to be entered for the defendants Ackerman, McGlinn and Butler.

*So ordered.*