MIKE GRENDA *vs.* CHARLES E. KITCHEN.

Essex.   February 4, 5, 1930. — March 11, 1930.

Present: RUGG, C.J., PIERCE, WAIT, SANDERSON, & FIELD, JJ.

*Bills and Notes*, Holder in due course, Indorser.  *Agency*, Existence of relation, Scope of authority.  *Evidence*, Judicial notice, Competency. *Practice, Civil*, Charge to jury, Exceptions.

The payee of a promissory note sent his son to the office of the maker to get back the money he had paid for the note.  At the office the son asked an employee of the maker if he knew of anyone who would be interested in the note, and the employee then introduced the son to one who agreed to purchase the note.  The employee accompanied the purchaser to a place where money was paid by the purchaser to the son and the note transferred to the purchaser, and made out a receipt for the purchaser, who could not read nor write very well.  Payment of the note having been refused at maturity, the purchaser placed it in the hands of the employee with instructions to demand payment from the payee the next day.  The next day the employee duly demanded payment from the payee, stating that he was doing so at the request of the purchaser. The payee refused to pay.  In an action by the purchaser against the payee on the note, the defendant contended that the note had been given by the maker as part of a scheme on his part to defraud; that his employee must have had knowledge of an infirmity in the note at its inception; and that this knowledge should be imputed to the plaintiff for the reason that the employee was his agent.  It did not appear that the plaintiff himself had any knowledge which would invalidate the note.  It appeared that the employee was not in the regular employ of the maker; and that his duties were to assist the maker's manager with the office work, to receive money, give receipts and occasionally to explain the maker's plan of business to inquirers.  He testified that he knew, when the payee's son called with the note, that the maker's office had stopped receiving and paying money in the course of the maker's business, but that newspaper accounts of that business which he saw were contrary to what he was told at the office and that he still had faith in the business at that time.  *Held*, that

(1) A finding was warranted that the plaintiff had taken all the necessary steps under G. L. c. 107, to fix the defendant's liability as an indorser;

(2) The trial judge was not required by St. 1926, c. 168, § 1, to take judicial notice of a condensed statement concerning the business of the maker taken from a summary appearing in an opinion setting forth the grounds of a certain decision by the Supreme Court of the United States; and there was no error in excluding that statement;

(3)  A finding was warranted that the maker's employee was an agent of the plaintiff for the purpose of giving notice of dishonor to the defendant and of demanding payment from him;

(4)  Findings were not required, however, as a matter of law that the employee was acting as agent of the plaintiff in such a capacity as to bind the plaintiff with the employee's knowledge of the maker's business transactions, or that the employee had any knowledge of the business which would affect the validity of the note;

(5)  On all the evidence, the question, whether the plaintiff had notice of any infirmity in the note at the time he purchased it, was for the jury;

(6)  No error prejudicial to the defendant appeared in the exclusion of questions relating to the action taken by the employee when he received money in the maker's office, as to the kind of business the employee was engaged in there, or as to the maker's business;

(7)  On the evidence, the judge properly refused to rule that the employee had knowledge of irregularities in the inception of the note from having read newspaper accounts concerning the maker's business.

Even if it were error, at the trial above described, for the judge to instruct the jury that in his opinion the employee was not a general agent of the plaintiff for all purposes, that error was cured by further instructions that the opinions of the judge were immaterial on questions of fact, which were for the jury to decide; and that it was for them to determine the extent of the employee's agency for the plaintiff.

Further instructions by the judge at the trial above described were *held* to be sufficient to enable the jury to decide the question of such agency and the extent, if any, to which the employee's knowledge was to be imputed to the plaintiff.

CONTRACT by the holder of a promissory note against the payee.  Writ dated June 25, 1926.

Material evidence at the trial in the Superior Court before *Collins*, J., is stated in the opinion.  At the close of the evidence, the judge denied a motion by the defendant that a verdict be ordered in his favor; and denied, among others, the following requests by the defendant for rulings:

"17.  That upon all the evidence, the said Cooper was the agent of the plaintiff in this transaction.

"18.  That if the said Cooper, prior to the negotiation of the said notes to Grenda, had knowledge of any facts tending to cast any doubt upon the legitimacy or honesty of the said Ponzi transactions, the said plaintiff is chargeable with said notice.

"19.  That from the various reports in the newspapers and other reports, the said Cooper must be assumed to have

known that there was some difficulty, defect or irregularity concerning the financial transactions of Charles Ponzi, which gave rise to the issuance of the notes in this suit."

Material portions of the judge's charge are described in the opinion. The jury found for the plaintiff in the sum of $1,330.08. The defendant alleged exceptions.

*J. M. Hargedon,* for the defendant.

*M. J. Batal,* for the plaintiff.

SANDERSON, J. The defendant is the payee named in a negotiable promissory note dated June 30, 1920, payable in ninety days from date, signed by "Securities Exchange Company Per Chas. Ponzi" as maker. The consideration is stated in the note to be $1,000, and the amount promised to be paid at maturity is $1,500. It was payable at any bank. The case was tried with another based upon a note payable to the order of the defendant's wife, but concerning which no contention is now made.

The defendant was cashier at one of the mills in Lawrence and a director in certain banks. He testified that before putting any money into the scheme he investigated to find out what sort of business Ponzi was engaged in, and from his investigation he believed money could be made in it; that he had previously made one investment in it of $1,000, and in forty-five days received back $1,500. After he had taken the note in suit he began to doubt the legitimacy of the scheme and sent his son with the two notes to the Ponzi office to get back the money which had been paid for them. At this time, which could have been found to be August 8 or 9, 1920, the Ponzi office had stopped payments and the defendant's son asked one Cooper, whom he met at that office, if he knew any one interested in the Ponzi notes. Cooper took the son to the plaintiff's place of business where the son represented to the plaintiff that his father needed money; that the notes were good and were worth $3,200 or more, but would be sold for $2,500; that Ponzi had banks all over the country, and when the notes were due the plaintiff could go to any bank and cash them, and if he did not thus get the money back he could obtain it from the defendant. Arrangements were made for the

plaintiff to take both notes and he paid $1,145 for the note in suit indorsed in blank by the defendant.  On September 28, 1920, the date when the note was due, the plaintiff presented it for payment at a bank in Lawrence and payment was refused.  On the same day he went with Cooper to find the defendant.  They were told he was away but would return the next day.  The plaintiff then left the note with Cooper with instructions to demand payment from the defendant the next day, and on the morning of that day Cooper, having the note in his possession, met the defendant and stated that he had come at the request of the plaintiff, the purchaser of the note, who had presented it for payment at a bank in Lawrence but payment was refused, and that he, Cooper, in behalf of the plaintiff demanded payment of the defendant.  The defendant refused to make payment.

The jury were justified in finding that all legal steps required to fix the liability of the defendant had been taken.  G. L. c. 107, §§ 109, 114, 119, 126.  *Hall* v. *Crane,* 213 Mass. 326, 327.  There was evidence tending to prove that an involuntary petition in bankruptcy was filed against Ponzi on August 9, 1920.  The plaintiff has received from the trustee in bankruptcy certain payments, and it was agreed that if the plaintiff was entitled to recover he was entitled to $1,145 and interest at the rate of six per cent less the various amounts that had been paid him.  The jury returned a verdict for the plaintiff.

There was no error in excluding the offer made at the conclusion of the evidence of a condensed statement of the business dealings of Ponzi from December, 1919, to August 9, 1920, taken from a summary appearing in the case of *Cunningham* v. *Brown,* 265 U. S. 1, decided in 1924.  The court was asked to take judicial notice of this statement.  This was not a matter of law of which the court was required to take judicial notice under St. 1926, c. 168, § 1.

The defendant also contends that the note in suit was given as part of a scheme of Ponzi to defraud, of which the plaintiff had or should have taken notice; that Cooper must be assumed to have known of some infirmity or

defect in the note at its inception, and that this knowledge should be imputed to the plaintiff because Cooper was his agent. It did not appear that the plaintiff had made any such investigation of the Ponzi business as had the defendant or that he doubted the validity of the notes. The defendant did not disclose to the plaintiff his own state of mind concerning them, and could have been found to have made misrepresentations through his son to induce the plaintiff to buy the notes. Cooper worked at the Ponzi office, assisting the manager in doing office work, receiving money, giving receipts and occasionally explaining the Ponzi plan to inquirers. He was not regularly employed. He knew, and stated to the defendant's son when he called with the notes, that the office had then stopped taking in and paying out money. He testified that what he saw in the papers was contrary to what he was told in the office; that he still had faith in the business on August 9 or 10, 1920; and that he did not think Ponzi had been petitioned into bankruptcy when he went with the defendant's son to meet the plaintiff. When Cooper first went with the defendant's son to the plaintiff it was apparently to aid him in finding a market for the defendant's notes. After the plaintiff had drawn from the bank the money with which to buy them, Cooper accompanied him to a mill where the money was paid to the defendant's son and the notes were delivered to the plaintiff. A receipt was written by Cooper because the plaintiff could not write or read very well. The plaintiff promised at some time, the exact date not being stated, to pay Cooper for his services. The agency of Cooper for the purpose of giving notice of dishonor to the defendant and demanding payment could be found upon this evidence. The jury might also have found that at the time the plaintiff purchased the notes Cooper had not been employed as agent to act in any capacity for him so as to bind the plaintiff with the knowledge which Cooper may have had of the Ponzi business. They could also have found that Cooper then had no knowledge about Ponzi's fraud which could affect the validity of the notes even if the knowledge of Cooper were to be imputed to

the plaintiff. The defendant excepted to the statement of the judge in his charge that, on the evidence in the case, Cooper was not in his opinion a general agent for all purposes. If it be assumed that there was error in this statement, it was cured by the qualification that it was for the jury to decide the extent to which Cooper's duties as an agent went, and by the further statement to the effect that the opinions of the judge on the facts were immaterial, that facts were for the jury to pass upon. *Gray* v. *Standard Life & Accident Ins. Co.* 170 Mass. 558, 559. *Bernasconi* v. *Bassi,* 261 Mass. 26. He also charged, in substance, that if a person places himself entirely under the direction and control of another or holds a person out to the world as having full power to act for him, the principal is bound by any guilty knowledge the agent may have; and that the principal is not a holder in due course if the agent has knowledge of transactions which would tarnish or make invalid the instrument. He refused to give in terms the instruction that upon all the evidence Cooper was agent of the plaintiff in this transaction, but instructed them that he was agent to give notice of dishonor if that was given, and declined to rule that for any and all other purposes Cooper was the plaintiff's agent. The instructions seem to have been sufficient to enable the jury to decide the questions relating to the scope of the agency and the extent, if any, to which Cooper's knowledge was to be imputed to the plaintiff, and also to pass upon the other material issues in the case.

The question, whether when the note was negotiated to the plaintiff he had notice of any infirmity in the instrument, was rightly submitted to the jury on all the evidence. *Back Bay National Bank* v. *Brickley,* 254 Mass. 261. It does not appear that the exclusion of the questions relating to the action taken by Cooper when he received money in the Ponzi office, to the kind of business Cooper was engaged in there, and to Ponzi's business, could have prejudiced the defendant in his substantial rights. Upon the evidence the judge was not required to give the requests relating to

alleged newspaper reports as affecting Cooper's knowledge of the Ponzi transactions.

We have not found reversible error in any of the exceptions argued.

*Exceptions overruled.*