EDWIN W. GAY *vs.* GEORGE FAIR & another.

Suffolk.    January 19, 1900. — March 3, 1900.

Present: HOLMES, C. J., MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Patent — Assignment — Corporation — Equity.*

In this case, which was a suit in equity by a stockholder in a corporation to compel an inventor to assign to the corporation certain inventions and patents, and to repay to it money voted to him in consideration of a conveyance by him, the evidence warranted a finding that there was no intention to defraud the corporation; but the bill was dismissed without prejudice to the right of any stockholder to claim that the inventions and patents were the property of the corporation.

BILL IN EQUITY, filed October 5, 1899, against George Fair and the Fair Loom Attachment Company, a corporation, alleging the following facts.

The defendant Fair, being the inventor of certain new and useful improvements in loom attachments for which he applied

for letters patent of the United States on August 27, 1897, entered into an agreement in writing with one T. Henry Pearse, for the purpose of forming a corporation to own and operate the letters patent when granted ; and pursuant thereto a corporation under the laws of the State of Maine was organized on October 9, 1897, for the purpose of manufacturing devices containing the invention and described in the application, and selling the same, of which corporation the defendant and three other persons were the incorporators.    The defendant Fair was elected director and president of the corporation, which offices he has ever since held. On October 9, 1897, a vote of the stockholders was passed, authorizing the directors " to purchase such patents and interest in patents on the subject of loom attachments as the directors may deem for the best interests of the company, and especially such as are now owned applied for by George Fair, of Boston, Mass., and to pay therefor a sum not exceeding four hundred and ninety-nine thousand, nine hundred and sixty dollars ($499,960) either in cash or in the capital stock of this corporation in not exceeding four hundred and ninety-nine thousand, nine hundred and sixty shares ; also to receive suitable deeds and assignments of the property so purchased, and to issue shares of stock in pursuance of this vote."    The whole amount of the capital stock of the corporation was five hundred thousand shares of the par value of one dollar each, of which forty shares were sold, or supposed to be sold, for one dollar each.

Pursuant to the above named vote, the board of directors, consisting of the defendant Fair and two other persons, on October 29, 1897, voted " to purchase the patent, patent rights, and processes upon the subject of attachments to looms and shuttles and kindred subjects which now belong to or vested in George Fair, of Boston, or for which he contemplates taking out or applying for patents for the following countries : United States, Canada, England, France, and Germany, and all improvements thereof and therein, and to pay therefor four hundred and ninety-nine thousand, nine hundred and sixty (499,960) shares in the stock of this corporation, the said George Fair executing all suitable assignments and conveyances of the said patent, patent rights, processes, and property, and to issue certificates for such shares in the name of the said George Fair or his nominees."

In pursuance of such vote, 499,960 shares of stock of the corporation were issued in payment for the inventions, patents, and interests.

At a meeting of the directors of the corporation, the defendant Fair being present and acting as chairman, it was voted to sell the patents, patent rights, and processes for the United States belonging to the corporation upon the subject of attachments to looms and shuttles and kindred subjects, to the American Fair Loom Attachment Company, a corporation duly incorporated under the laws of Maine, and to receive in payment therefor 499,940 shares in the stock of that corporation, such stock to be issued in the name of the Fair Loom Attachment Company, or its nominees ; and accordingly the patents, patent rights, and processes were sold for such consideration.

At some time subsequent to the organization of the Fair Loom Attachment Company the defendant invented a certain improvement on the loom attachment for which he had applied for letters patent in August, 1897, and having reported the fact of his invention to the directors of the Fair Loom Attachment Company, who at that time were the defendant, the plaintiff, and one other person, it was voted that " the president be and hereby is authorized to procure United States patent on the actuating attachment to looms in connection with the shuttle attachment, and also to see that the description of said actuating attachment is made part of the specifications in the applications for foreign patents, in which this company is interested ; also the papers of assignment from said Fair inventor to be prepared, executed, and forwarded with application for Canadian patent; also that an assignment be made to the American Fair Loom Attachment Company of the right to use, manufacture, and sell in the United States of America the said actuating attachment to looms in connection with the said shuttle attachment." Application for letters patent for this last-mentioned invention was accordingly made by the defendant Fair at the cost of the Fair Loom Attachment Company, by which all the charges and costs thereof were paid, but the applications were not assigned to the corporation by the defendant Fair, and he refuses so to assign them.

The defendant Fair caused an assignment to be made by him to the corporation of the first-named invention, and letters patent,

and inserted therein an agreement by the corporation to pay him $200 monthly during the life of the patent, a copy whereof " is hereto annexed marked F " ; * and thereunder large sums have been paid by the corporation to him, and received by him without any consideration whatever.

On August 19, 1898, at a meeting of the directors, consisting of the plaintiff, the defendant Fair, and one other person, the defendant Fair with the other person, and against the protest of the plaintiff, voted that the patent for the invention first above named, which had been allowed by the United States Patent Office, be issued to the defendant Fair, and held by him until payment of the indebtedness to him had been made by the corporation. The vote recited " that the consideration of two hundred dollars ($200) per month, as named in an assignment of patent given by George Fair to this Company and dated Jan'y 25, 1898, is an obligation of this Company."

At a meeting of the directors of the Fair Loom Attachment Company, consisting of the plaintiff, the defendant Fair, and one other person, held on September 8, 1898, the defendant Fair and

---

* The material portion of this instrument was as follows: " Now therefore to all whom it may concern, be it known that for and in consideration of one dollar to the said George Fair in hand paid by said Fair Loom Attachment Company, the receipt whereof is hereby acknowledged, by the said George Fair, and in further consideration of an agreement on the part of the said Fair Loom Attachment Company, to be well and truly kept and performed, to pay to the said George Fair, his heirs and assigns, the sum of two hundred dollars per month, on the twelfth day of each and every month, beginning October 12, 1897, during the lifetime of any United States patent which may be granted for the said improvements; and upon the still further consideration that the said company shall, at the most advantageous time, having respect to the validity and lifetime of the patents, procure in said company's own name, and at its own expense, patents in Canada, England, France, and Germany, as well as the United States, the said George Fair has assigned, sold, and set over, and does by these presents assign, sell, and set over unto the said Fair Loom Attachment Company, its successors and assigns, all the right, title, and interest which he has or may have in said invention and patents, and all improvements and amendments thereof, hereby covenanting and agreeing with the aforesaid company that he has the full right to convey the interest herein transferred, and that he has not executed any writings in conflict herewith. And he hereby authorizes and requests the Commissioner of Patents of the United States and the Commissioner of Patents of Canada to issue the said letters patent to the said Fair Loom Attachment Company in accordance with this assignment."

the other person voted that the first-named invention be reassigned to the defendant Fair, and he caused the letters patent to be sent to him, and he now holds them.

The defendant Fair, subsequently to October 29, 1897, made a certain invention other than that above referred to, which is an improvement in the invention first above described, for which he has applied for letters patent, and which he is bound to assign to the Fair Loom Attachment Company, together with his application for a patent therefor, but which he refuses to do.

The plaintiff is a stockholder in both the Fair Loom Attachment Company and the American Fair Loom Attachment Company, and has paid for his stock a large sum of money, relying entirely upon the supposed value of the inventions which had been conveyed to the corporation, and he still believes that the inventions are of great value, and without them both the corporations are unable to do the business for which they were organized, and his stock therein is worthless.

The plaintiff has requested the defendant Fair, as president of the Fair Loom Attachment Company, and the clerk of the corporation, in writing, to call a meeting of the stockholders of the corporation for the purpose of taking proper action as to the matters and things above set forth, and particularly to begin suit against the defendant Fair in order to protect the interests of the corporation and its stockholders; but no meeting of the stockholders has been called for such purpose.

The prayer of the bill was that the defendant Fair be required to disclose whether he had caused an assignment, or what purports to be such, to be made from the Fair Loom Attachment Company to him of the letters patent; that if he had caused such an assignment to be made to him he be ordered to reconvey the same to the corporation; that he be ordered to execute and deliver to the corporation an assignment of the second invention and the application for letters patent therefor filed January 25, 1898; that if there had been no conveyance made by the corporation to him of the letters patent first named he be restrained from asserting any claim to the patent under the vote of the directors of August 19, 1898, or September 8, 1898; that he be ordered to deliver such letters patent to the clerk of the corporation; that he be ordered to assign to the corporation patents

granted to him for the inventions in Canada, Great Britain, France, and Germany, and also the second invention referred to in the bill and the application for a patent therefor ; and that he be ordered to release the corporation from all liability to pay him the sum of $200 a month or anything else under the assignment by him to the corporation, and to return to the treasurer of the corporation all sums received by him under such assignment.

At the hearing, before *Hammond*, J., the following decree was entered.

" This cause came on to be heard, and was argued by counsel; and thereupon, upon consideration thereof, it was ordered, adjudged, and decreed as follows, viz. :

" First, That the terms and agreements severally set forth in the instrument of assignment dated the 25th day of January, A. D. 1898, a copy whereof marked F is annexed to the plaintiff's bill of complaint, are severally binding upon the defendant Fair Loom Attachment Company and the defendant George Fair, and, so far as inconsistent with the other instruments or agreements named in the bill of complaint or annexed thereto, are a substitute therefor.

" Second. And it appearing that the defendant George Fair has not been unwilling, upon his part, to do whatever was required of him by virtue of said instrument of assignment whenever called upon so to do by the Fair Loom Attachment Company, there was no necessity for the plaintiff to bring his bill of complaint against the defendants; wherefore this court doth order that the plaintiff's bill do stand dismissed out of this court, with costs to be paid by the plaintiff Edwin W. Gay to the said defendant George Fair and the defendant Fair Loom Attachment Company, to be taxed by the clerk of the court."

The plaintiff appealed to the full court.

The facts appearing in evidence and material to the decision are stated in the opinion.

*C. H. Drew*, for the plaintiff.

*G. Fair*, pro se.

*G. M. Rich*, for the Fair Loom Attachment Company.

BARKER, J. The evidence was taken under Equity Rule 35, and the case comes here by an appeal from a decree dismissing the bill. There is no dispute that the plaintiff is

a stockholder, nor that he has brought the matters with which the bill is concerned to the attention of the officers in control of the corporation, who own or control a majority of its stock, nor that the corporation has neglected, if it has not refused, to take action upon the alleged matters of complaint. The chief of those is that while by the votes of the stockholders and of the directors the sale from the inventor to the corporation was for certain shares of the stock, no other consideration being named in the votes, the conveyance recited as a further consideration an agreement of the corporation to pay the inventor two hundred dollars a month. Although the stock stipulated in the votes has been transferred, the inventor has also received some such monthly payments, and the corporation, and its officers, and a majority of its directors at least, take the ground that the inventor, who is also the president and one of the three directors, was entitled to the monthly payments. Growing out of this was a reassignment to the inventor of the patent issued by the United States, to be held by him until the indebtedness because of the omission to make the monthly payments should be made good.

The evidence leads us to the inference that, notwithstanding the language of the votes, the monthly payments and the transfer of stock were both terms of the bargain with the inventor, and that the clause to that effect in the conveyance was assented to by the plaintiff while he was himself a director ; and that he also assented by his affirmative vote to the action of the directors on August 19, 1898, in declaring the stipulation for the monthly payment to be an obligation of the corporation.

It seems that the plaintiff, at the same meeting, opposed and protested against the vote that the principal patent, not then issued, should be issued to the inventor, and held by him until the payments in arrears should be made up. The conveyance contained no term requiring a reassignment in case of non-payment. But it seems that the corporation had no other means of securing its indebtedness. As the invention had been assigned to the corporation, the United States patent issued to it notwithstanding this vote and was then reassigned. Assuming that it would have been better not to make this reassignment it may have been made and received in good faith, merely as security for the overdue instalments and for the future discharge of the

obligation. After the bill was filed this patent was again assigned to the corporation, and it now stands in its name. In connection with this reconveyance the claim to further payment of the monthly sum was given up, for what consideration does not clearly appear. But it is not a necessary inference that the assignment as collateral, or the retransfer, was unfair.

The Canadian patent was issued to and stood in the name of the corporation. The English and German patents have not been issued. The French patent has been issued to the inventor and has not yet been assigned to the corporation; nor had the reassignment of the United States patent to the corporation been recorded in Washington at the time of the hearing. The inventor testified that at all times he had been ready, and was ready still to execute any proper assignments, or other instruments, to vest in the corporation all the inventions and patents contemplated by the agreement between himself and the corporation. From this and the other evidence it would be proper to infer that there had been no design on the part of the corporation, or of any of its officers, to betray or sacrifice its interests in any of the matters of which the plaintiff complains.

The invention made after October 29, 1897, does not seem to have been one to which the corporation had a right. We are of opinion that the bill should be dismissed. As the corporation had not, at the time of the appeal, caused the retransfer to itself of the American patent to be recorded, and had not then taken to itself a transfer of the French patent, and as the English and the German patents, if granted, will issue in the name of the inventor, although in fact the property of the corporation, this suit ought not to bar any stockholder from claiming that all the inventions covered by the agreement, and the patents therefor in the United States, the Dominion of Canada, England, France, and Germany, are the property of the corporation. We assume that it was for this purpose that the recitals were inserted in the decree, and it is just to dismiss the bill without prejudice to the right of any stockholder to claim that the inventions and patents mentioned in the bill, except the invention alleged to have been made after October 29, 1897, and the patents therefor, are the property of the corporation.

*So ordered.*