ALBERT F. KING, JR., trustee, *vs.* MILAN C. CRAM
& others.

Essex.   December 17, 1903. — February 25, 1904.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & BRALEY, JJ.

*Equity Pleading and Practice.   Assignment.   Bankruptcy.   Insurance, Life.*

In a suit in equity coming to this court by report, where the evidence was not taken
by a commissioner and is not reported in full, the conclusions of fact stated in
the report must be taken to be true.

One who voluntarily assigns a policy of insurance on his own life cannot maintain
a bill in equity for a cancellation of the assignment on the ground that the
assignee has no insurable interest in his life.

A trustee in bankruptcy, under the bankruptcy act of 1898, has the same rights
against the assignee of a policy of life insurance, taken out by the bankrupt and
assigned by him in good faith before he was insolvent, that the bankrupt him-
self would have and no greater.

Under St. 1894, c. 522, § 73, (R. L. c. 118, § 73,) the beneficiary of a policy of life
insurance issued before April 11, 1894, cannot sue on the policy in his own name,
and a policy taken out by the assured before that date, if otherwise valid, is
none the less so for want of an insurable interest on the part of the beneficiary.

In the absence of evidence of a gambling contract, it is not necessary to the validity
of an assignment of a policy of life insurance that the assignee should have an
insurable interest in the life of the assured.

BRALEY, J.   This bill in equity was brought by the trustee
in bankruptcy of the defendant Cram, who was adjudged a bank-
rupt on August 8, 1901, to have a policy of insurance on his life
declared to be the property of the bankrupt's estate.   The policy
was issued by the State Mutual Life Assurance Company on
August 16, 1888, and on the twenty-sixth day of October, 1888,
it was transferred by him to his sister in law, Lizzie R. Perham,
one of the defendants, by an assignment duly received, and re-
corded by the company.   In the Superior Court the bill was
taken for confessed against the State Mutual Life Assurance
Company, joined as a party defendant; and after a decree had
been entered dismissing the bill, the case was reported to this
court on findings of fact and rulings of law made at the trial.

For the purposes of our decision, as the evidence was not taken
by a commissioner, and is not fully reported, the conclusions
drawn therefrom, and the facts set out in the report, must

be taken to be true. *Wentworth* v. *Woods Machine Co.* 163 Mass. 28.

It is found, and stated, that when the assignment was made by the bankrupt he was not insolvent, and there was no intention on his part to hinder, delay or defraud his creditors, and the transaction could not be treated as colorable, but was intended to pass his title in the policy to the assignee. Under this finding of fact, there was no conveyance of property in fraud of his creditors, whether the assignment of the policy be considered as founded on a sufficient consideration, or treated as purely voluntary on his part, and a gift by him to his sister in law.

It does not appear that the assured when he assigned the policy was under the disability of infancy, or of unsound mind, or executed and delivered the instrument under the influence of fraud or coercion practised on him by the defendant Perham. And on the facts reported, he could not successfully maintain a bill in equity, to have his free and voluntary act declared to be of no legal effect, and for a cancellation of the assignment. *Fairbanks* v. *Snow*, 145 Mass. 153, 154. *Adams* v. *Collier*, 122 U. S. 382, 390.

The trustee stands in no better position than the bankrupt and assignor. Whatever rights, if any, the latter had which would enable him to avoid the transfer, are now possessed by the plaintiff, but he is not clothed with any further or larger powers to set it aside. Bankruptcy act of 1898, § 70 *a* (5), *e.* *Pratt* v. *Wheeler*, 6 Gray, 520. *Holmes* v. *Winchester*, 133 Mass. 140, 142. *Sibley* v. *Quinsigamond National Bank*, 133 Mass. 515. *Munroe* v. *Dewey*, 176 Mass. 184. *Emery* v. *Boston Terminal Co.* 178 Mass. 172, 184. *Warren* v. *Moody*, 122 U. S. 132. *Adams* v. *Collier*, *ubi supra.*

If, however, it be assumed that it is open to the trustee to contend, that no title to any property of the bankrupt passed by the assignment, because the person to whom it was made did not have at the time an insurable interest in the life insured, and the assignment therefore is void as a matter of public policy, and will not be enforced by the courts, he does not state a case that entitles him to equitable relief.

Whatever the negotiations may have been between Milan C. Cram and the defendant company concerning the terms of the

policy, and who should be made the beneficiary, or the form of the application made by him, the policy that was issued constituted the contract of insurance, and was made payable at maturity " to the person whose life is hereby insured, or his assigns," and in case of his death " to his executors, administrators or assigns," and not to Lizzie R. Perham as he had requested.    See *O'Brien* v. *Continental Casualty Co.* 184 Mass. 584.

But if the assignment be treated as a means of transferring the policy to her, and so carried out his primary intention, she is not placed in a worse legal position than if she had been named originally as the person to whom the amount of the policy was to be paid.    The contract of insurance was obtained and made by him ; the life insured was his life.    Independently of the source from which the money was derived, whether a loan by her, or she advanced it, in expectation of receiving at some time the value of the policy, or coming in part from his own funds, the premiums in each instance were paid by him to the company, and by reason of his membership as a policy holder he was entitled to vote in the management of its corporate affairs.    This policy was issued in 1888, and by St. 1894, c. 522, § 73, now R. L. c. 118, § 73, any suit for the recovery of the amount of the policy, at the period of maturity, must have been brought in his name, or in the case of his death, in the name of his executor or administrator.    *Wright* v. *Vermont Ins. Co.* 164 Mass. 302.

He had an insurable interest in his own life, and this was enough to support the policy, and prevent it from being considered a mere wagering contract, in which he had no interest whatever in the amount to be paid under it, but only in the life insured, and where the beneficiary becomes a mere gambler, whose object is purely speculative, depending on the death of the insured, rather than on a continuance of his life.

A contract in this form is not on its face a mere gaming risk, and hence is not void as against public policy.    *Forbes* v. *American Ins. Co.* 15 Gray, 249, 255.    *Campbell* v. *New England Ins. Co.* 98 Mass. 381.    This would be enough to dispose of the plaintiff's contention, but he cannot prevail for another reason.

At the date of the assignment, as between the company and the bankrupt, the original policy had not been surrendered, and was still in force as a valid existing contract.

The assignee was a sister of his wife, a member of his household, and his house was her home; apparently, he was owing her quite a sum of money for services, and it can fairly be inferred, not only from motives of affection for her sister, and for him, but from those of pecuniary advantage and gain, she would desire the continuance of his life in preference to his death. Under these conditions, the assignment appears to have been taken by her in good faith, and not for the purpose of gambling on the hazard of the duration of a life, in which her brother in law after the assignment, had no monetary, but only a vital interest. There were no limitations in the policy preventing him from a free disposition of all his title to and benefits under the contract, and. he might sell it, or he could dispose of it by gift to a relative by marriage.

In either case, in the absence of evidence to show, that notwithstanding its form, it was intended as a gaming transaction, the purchaser, or the donee, takes a good title, free from any immoral taint; and it would not be necessary in order to sustain it, that they should have an insurable interest in the life of the assignor and donor. *Mutual Ins. Co.* v. *Allen,* 138 Mass. 24, 31, 32. *Shea* v. *Massachusetts Benefit Assoc.* 160 Mass. 289, 291. *Fairchild* v. *Northeastern Ins. Co.* 51 Vt. 625. *Connecticut Ins. Co.* v. *Schaefer,* 94 U. S. 457, 463.

The findings and rulings made at the trial, that the transaction between the parties was not fraudulent, as against the creditors of the bankrupt, and that the assignee acquired a good title under the assignment of the policy which could not be avoided by the plaintiff, were right.

*Decree affirmed.*

*M. A. Pingree & J. J. Ryan,* for the plaintiff.

*J. H. Pearl & O. J. Carlton,* for the defendant Lizzie R. Perham.