CHARLES B. FILLEBROWN & others, trustees, *vs.* KEZIA W.
HAYWARD & another.

Suffolk.   December 8, 1905. —February 28, 1906.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Corporation.   Bills and Notes*, Holder in good faith.

The directors of a Massachusetts corporation, in the absence of a by-law or a vote
of the stockholders restricting their power, have authority to establish a reason-
able salary for the services of the treasurer of the corporation.

A vote of the directors of a Massachusetts corporation fixing the salary of the
treasurer of the corporation, if the directors in good faith regard the salary as
a fair compensation for the services and there is no purpose to appropriate
corporate profits unlawfully under the guise of a salary, is not invalidated by
the fact that the board of directors that passed the vote consisted of three
persons of whom one was the treasurer and another the treasurer's daughter.

A woman, the treasurer of a Massachusetts corporation of which she also was a
director and the largest stockholder, resigned as treasurer and director and sold
all her stock in the corporation to a person who for two years had been asso-
ciated with her as director and who became her successor as treasurer of the
corporation. He paid her for the stock partly in cash and partly in promissory
notes payable one in each month for a period of five years. For a period of
three years and a half these notes were paid as they fell due by checks of the
corporation signed by the treasurer in that capacity, payable to him individu-
ally and indorsed by him to the former treasurer from whom he purchased the
stock. The checks were received in good faith. The maker of the notes, after
his purchase of the stock, acted not only as treasurer but also as president and
general manager of the corporation. His management was bad, and the profits
of the corporation rapidly fell off and were turned into large and increasing
losses. The corporation became bankrupt and its treasurer absconded. The
trustees in bankruptcy of the corporation brought a bill in equity against its
former treasurer to compel repayment of the sums received by her from the
checks given in payment of the notes of the absconding treasurer. The judge
who heard the case found that the defendant took the checks in good faith, and
made a decree in her favor. *Held,* that the decree must stand; that the ques-
tion of the good faith of the defendant in taking the checks was one of fact,
and that a finding was warranted that the defendant had sustained the burden
of showing that she was a holder in good faith and for value.

BILL IN EQUITY, inserted in a writ of the Superior Court
dated May 4, 1904, by the trustees in bankruptcy of the Cable
Rubber Company, a corporation organized under the laws of this
Commonwealth, against Kezia W. Hayward of Ponkapog, the
former treasurer of the Cable Rubber Company, formerly hold-
ing and controlling a majority of the capital stock of that com-

pany, and William J. Cable of Boston, praying for an order to compel the defendant Hayward to pay to the plaintiffs certain sums of money alleged to have been taken by the defendant Cable from the Cable Rubber Company and paid to her.

In the Superior Court the case was heard by *Sheldon,* J., who made a decree that the plaintiffs were not entitled to recover from the defendant Hayward on any of the grounds alleged in their bill, except the sum of $1,192.83 paid to that defendant as salary after her resignation as treasurer, and that as to the defendant Cable, on whom no service had been made, the bill should be dismissed without prejudice. The plaintiffs appealed.

The averments in the first, second and third paragraphs of the bill were in substance as follows:

1. That on October 20, 1903, a petition in bankruptcy was filed against the Cable Rubber Company, that on November 18, 1903, that company was adjudicated a bankrupt, and on December 1, 1903, the plaintiffs were appointed its trustees in bankruptcy.

2. That the defendant Hayward was on and before May 27, 1897, a very large stockholder in the Cable Rubber Company, owning or controlling six hundred and fifty-four shares of the company, and holding as trustee for her son and daughter one hundred shares more, making a total of seven hundred and fifty-five shares held by her and her family out of a total capitalization of one thousand shares; that the defendant Hayward was also at that time a director in the company, the other director being Wheeler Cable; that on May 27, 1897, the defendant William J. Cable was elected a director and the defendant Hayward was elected treasurer; that at a directors' meeting held on the same day, it was voted that the treasurer's salary be $2,000 per annum, commencing on June 1, 1897; that at a directors' meeting held on January 31, 1898, it was voted that the treasurer's salary be $3,000 per annum for the year 1898; that the directors at this time were, Wheeler Cable, the defendant Hayward and the defendant Cable; that on January 18, 1899, the stockholders at a meeting held in Boston, elected as directors, the defendant Cable, the defendant Hayward and Theodora L. Hayward for the year 1899, Theodora L. Hayward being the daughter of the defendant Hayward; that at a directors' meet-

ing held on the same day, at which the defendant Cable was temporary chairman, it was voted that the treasurer's salary be $4,000 for the year 1899.

3. That on September 18, 1899, the defendant Hayward, who from the date of her election had held the position of treasurer, tendered her resignation as treasurer of the company which was accepted by the directors on that day.

The findings of fact by the judge were as follows:

"I. At the hearing before me, the averments of the first, second and third paragraphs of the plaintiffs' bill were either proved or admitted.

" The defendant, Mrs. Hayward, during her term of service as treasurer of the Cable Rubber Company, devoted a large part of her time to the performance of her official duties. She succeeded her deceased husband as treasurer after his death in May, 1897. The corporation was at that time in a prosperous condition, doing a profitable business, and this state of affairs continued until after she sold her stock to William J. Cable and resigned her office. She had been a director of the corporation before her husband's death. He was one of the founders of the corporation, had always managed its business and looked after its finances; and its success was mainly due to his skill and energy. She had been accustomed to follow the business with him, going over many details and conferring with him in the evenings and outside of business hours. While she herself was treasurer, she intended to attend to all the business connected with the financial affairs of the corporation, and to use for this purpose whatever time and effort might be necessary. She went into the office every morning at about eight o'clock, or soon after, except during the months of July and August, when her visits were less frequent, and stayed through the whole or most of the forenoon and sometimes a part of the afternoon, went over the mail, looked through orders, received reports from the factory, kept track of prices, conferred with the bookkeeper, signed the necessary checks that were drawn by him, examined the reports sent in by managers of branch stores which were maintained and run for the corporation through managers and subordinate companies. Her salary was as stated in the bill, being increased from time to time as therein averred. I find that her

compensation at the rate of $4,000 per year was somewhat in excess of the fair value of the services rendered by her; but I also find that the corporation was at that time prosperous and thriving and its business was a profitable and growing one, that her salary did not exceed what she honestly regarded as the fair value of her services, and no officer, stockholder or creditor of the corporation objected to its amount; that the amount of her salary was at each change fixed honestly and in good faith without any collusion or unfair practice between herself and William J. Cable or any one else; and that all the payments which she as treasurer made to William J. Cable were made in perfect honesty and good faith and in the exercise of proper and reasonable care on her part; and that the plaintiffs are not entitled to compel her to refund any part of the amount received by her as salary up to the date of her resignation, or of the payments made by her as treasurer to William J. Cable. Indeed, the plaintiffs did not claim at the hearing to recover anything from her by reason of the payments made by her to William J. Cable.

" In September, 1899, she sold all her stock to William J. Cable for the sum of $50,000, being a little over $66 per share. This was the price named by her, and was a fair price; if anything it was less than the fair value of the stock at that time; and said William J. Cable was so anxious to carry this trade through that he procured to be paid $3,500 to Mr. Edmund H. Talbot for obtaining for him a loan from a national bank upon a pledge of the stock to enable him to make the cash payment which Mrs. Hayward required. This arrangement was made; Mrs. Hayward transferred her stock to Cable; he paid her the sum of $30,000 in cash, and gave her also sixty notes, each for the sum of $333.33, and payable at regular intervals of one month, beginning in January, 1900. It was one of the terms of this bargain that he should pay her salary for the residue of the year 1899. He did not do this; but the corporation did so, and she received the amount, being the sum of $1,133.33 from the corporation, knowing that it came from the corporation, by its checks, drawn to her order, and without giving any equivalent therefor, as she knew. I find that the plaintiffs are entitled to recover this amount from her, with interest from May 9, 1904, the date of the filing of the bill.

"II. After Cable had bought Mrs. Hayward's stock as aforesaid, he acted as president, treasurer and general manager of the corporation, and had full charge of its business and affairs with the acquiescence of the other directors, at a salary of $5,000 per year. He managed all the affairs of the corporation, apparently having full authority over them; and Mrs. Hayward, after her resignation, on September 18, 1899, had no knowledge or information as to the same which has any bearing upon the questions involved in this bill. Cable's management of the business was bad; the profits fell off rapidly and were turned into large and increasing losses; and the corporation finally became bankrupt as averred in the bill. Cable never drew his salary as such; but an account was kept with him on the books of the corporation, and he was accustomed to draw sums from time to time in the following manner: Whenever he had occasion for money, he caused a check to be drawn, payable to himself individually, and he signed it as treasurer. He then, in the numerous cases in which he did not himself draw the amount of the check, indorsed it to whatever individual creditor of his own he wished to pay. He himself kept no bank account, and practically paid all of his bills in this way. And on or after the first day of each month, beginning in January, 1900, he caused in this same way the check of the corporation for $333.33 to be drawn payable to himself individually, signed it as treasurer, indorsed it individually to Mrs. Hayward, and sent it to her by mail; she received it, collected it, and sent to him the note coming due that month. And in this way she received from him payment of his notes coming due to her each month except one from January, 1900, to and including June, 1903, being the total amount of $13,666.53. The total amounts so drawn by Cable and paid to her and his other creditors and to himself were properly charged to him on the books of the corporation. They exceeded each year and each month the amounts respectively accruing due to him from the corporation. These accounts were openly kept, were never in any way concealed from any one interested in the corporation; and Mrs. Hayward received the checks so sent to her in good faith, without noticing their form and without any actual knowledge that he obtained the sums so sent her from the corporation. The amounts of all these checks were charged to

Cable on the books of the corporation as aforesaid. There is no evidence by which I can determine which ones, if any, of the sums so drawn by Cable constituted overdrafts. He absconded soon after the failure of the corporation, and neither party has been able to procure his testimony. At the end of each year, he caused his account to be apparently balanced by crediting 'Expense' with the total amount of the charges against him. Four or five of the checks so received by Mrs. Hayward were drawn to the order of George F. McDonald the bookkeeper of the corporation, and either indorsed by him to Cable and by him to Mrs. Hayward or directly by McDonald to her; and one check was drawn directly to her own order; but the facts as to these checks and the sums that they represented are exactly the same as already stated with reference to the checks in general. I find that the plaintiffs are not entitled to recover from Mrs. Hayward any of the sums which she thus received from Cable in payment of his notes to her; that these funds when she received them were not the property of the corporation, but were the property of Cable individually."

For the purposes of the appeal, it was agreed that the facts set forth in Paragraph I. of the foregoing finding of facts and memorandum should be taken to be true; and that the facts as found and set forth in Paragraph II. should be taken to be true, except so far as the same might be modified or reversed by the evidence printed from the report of a commissioner appointed under Chancery Rule 35.

In the opinion the defendant Hayward is called the defendant, the defendant Cable not being before the court.

*G. W. Anderson,* (*W. A. Rollins* with him,) for the plaintiffs.

*A. Hemenway,* (*W. S. Pinkham & J. W. Farley* with him,) for the defendant Hayward.

BRALEY, J. In accordance with a stipulation of the parties the findings of fact in the first paragraph are to be taken as true. If so, it follows that during a period of nearly two and one half years in which the defendant was treasurer of the corporation her salary was increased annually by vote of the board of directors, until it reached an amount which the plaintiffs contend was largely disproportionate to the value of any services rendered. But if the amount of compensation compared with

her actual duties seems to be unduly large, yet it is stated in these findings that she and the directors acting in good faith regarded the salary as a fair valuation of her services to the company, which during this time was doing a profitable and extensive business. Being a domestic corporation, and no vote of the stockholders or by-law appearing which limited their power, the directors had authority to establish a reasonable salary for the services of the treasurer. Pub. Sts. c. 106, § 23. *Tripp* v. *Swanzey Paper Co.* 13 Pick. 291. *Von Arnim* v. *American Tube Works*, 188 Mass. 515.

That she was a member of the board, which also included her daughter, would not invalidate its action, for there is no evidence of any purpose to appropriate corporate profits unlawfully under the guise of salary, the abstraction of which would impair either the solvency of the company, or the right of minority stockholders to a reasonable division of surplus earnings in dividends. *Gay* v. *Fair*, 175 Mass. 521, 527. *Von Arnim* v. *American Tube Works, ubi supra.*

If the money thus obtained had been taken wrongfully, the corporation, or upon its bankruptcy the plaintiffs, could recover back any excess beyond such sum as would have afforded a reasonable remuneration during the time she performed the duties of the office. But as no fraud, actual or constructive, is found, and the transaction was entered into honestly, the defendant is not obliged to make any reimbursement. *Fort Payne Rolling Mill* v. *Hill*, 174 Mass. 224. *Marlborough Association* v. *Peters*, 179 Mass. 61. *King* v. *Cram*, 185 Mass. 103, 104.

The question, however, of most consequence remains for consideration, concerning which the stipulation further provides that the facts set forth in the second paragraph of the findings are to be deemed true, unless modified or reversed by the evidence which has been reported on this part of the appeal. Unless plainly wrong these findings are to be considered as conclusive. *Skehill* v. *Abbott*, 184 Mass. 145, 147.

After the period of service had expired to which reference already has been made, the defendant having resigned her offices as treasurer and director sold her stock in the corporation to one Cable, who then was not only treasurer and presi-

dent, but with the acquiescence of the directors also acted as manager of the corporation with a general control of its affairs.

If thereafter there was any failure on the part of the board of directors properly to discharge the functions of their office this delinquency is not shown to have been brought to the knowledge of the defendant.

Upon the purchase of this stock Cable made a large money payment and gave her his promissory notes for the balance, so divided that one of them should mature at the beginning of each month for a period of five years.

It was undisputed that upon these notes as they severally matured at least the sum of $13,000 was paid by checks drawn by him from time to time on the treasury of the corporation. The books of account disclose in detail the number and amount of these checks, and a balance was always struck by crediting as expense a lump sum sufficient to offset the debit items.

In his dealings, although in a few instances he caused the checks to be made payable to the order of the bookkeeper who indorsed them either to himself or to the defendant, and upon one occasion the check was made payable directly to her order, this course of dealing was uniformly followed. An examination properly conducted would have shown that when these monthly payments were received as between Cable and the company his account would have appeared to have been constantly overdrawn, but the defendant had no actual knowledge of this condition of affairs, or that the money she was receiving came clandestinely from the corporation rather than lawfully from him. The plaintiffs strenuously contend that notwithstanding this, the form of the checks should have suggested to her that he was misappropriating the funds of the company, and therefore she should be charged with constructive notice that he was using corporate assets for the payment of his maturing notes.

The early doctrine on this subject so far as it relates to negotiable paper is found in *Ayer* v. *Hutchins*, 4 Mass. 370, 372, and in *Thompson* v. *Hale*, 6 Pick. 258, 261, where it is said that circumstances which ordinarily would excite the suspicions of a reasonably prudent and careful man were sufficient to put the party receiving negotiable paper not overdue upon his inquiry

as to suspicious defects or infirmity of title in the prior holder. See also *Cone* v. *Baldwin*, 12 Pick. 545, 546.

The rule thus formulated gave way later to what has been called the modern doctrine, that neither knowledge of suspicious circumstances, nor doubts as to the genuineness of the title, nor gross negligence on the part of the taker either singly or together are sufficient to defeat the holder's recovery, unless amounting to proof of want of good faith. *Smith* v. *Livingston*, 111 Mass. 342. *Freeman's National Bank* v. *Savery*, 127 Mass. 75, 79. *Boston Steel & Iron Co.* v. *Steuer*, 183 Mass. 140. *Massachusetts National Bank* v. *Snow*, 187 Mass. 159. *Goodman* v. *Harvey*, 4 Ad. & El. 870. *Murray* v. *Lardner*, 2 Wall. 110. *Hotchkiss* v. *National Banks*, 21 Wall. 354. *Lytle* v. *Lansing*, 147 U. S. 59. *Jones* v. *Gordon*, 2 App. Cas. 616, 628, 629. See also *Jones* v. *Smith*, 1 Hare, 43.

At the time the first note of the series matured and the first check in payment was given the St. of 1898, c. 533, commonly known as the negotiable instruments act, now R. L. c. 73, had become operative. By § 56 of the original act, now § 73 in the revision, the common law rule shown by these decisions relating to implied notice to the purchaser for value of negotiable paper of a defect in the title of a previous owner was codified. The plaintiffs, therefore, cannot recover the proceeds of the checks unless the defendant took them in bad faith, and this inquiry is a question of fact. St. 1898, c. 533, § 56. *First National Bank of Chelsea* v. *Goodsell*, 107 Mass. 149. *Smith* v. *Livingston*, 111 Mass. 342. *Freeman's National Bank* v. *Savery*, 127 Mass. 75. *Spaulding* v. *Kendrick*, 172 Mass. 71.

If each check was signed by him as treasurer this of itself was not such an affirmative representation as to indicate that he was acting in a fiduciary capacity by which his authority was restricted and limited, as authority to draw and issue checks in the name of the corporation was incidental to his office, and the holder in due course of business would receive them under a presumption that they were issued lawfully. *Shaw* v. *Spencer*, 100 Mass. 382, 393. *Merchants' National Bank* v. *Citizens' Gas Light Co.* 159 Mass. 505, 507. *O'Herron* v. *Gray*, 168 Mass. 573. Compare *Kneeland* v. *Braintree Street Railway*, 167 Mass. 161, 162.

While the defendant may be held to have known that by purchasing her stock Cable had acquired control of the corporation, there does not appear to have been any reasonable ground for an assumption on her part that its business under his management was not profitable, or had been impaired and then ruined, until the company's assignment for the benefit of its creditors was announced. Before her retirement for at least two years they had been associated in conducting its business affairs, and neither during this period nor after her withdrawal is it shown that there was anything in his conduct indicating to her that he was dishonest or incompetent. There was therefore no reason why she should not have retained her confidence in him, and even if her former experience had made her familiar with the duties of the office which he held, it could be found that she received the checks without realizing the possible fact that notwithstanding their form they were drafts upon the funds of the company in payment of her own debt.

It is more than probable that as note after note matured and payments were made in this manner she gave no thought to the general transaction except to get her pay, but, if so, she still may have inferred that the money so appropriated was in payment of his own salary, or otherwise was being withdrawn lawfully. See *Fay* v. *Noble*, 12 Cush. 1, 16, 17. But while she may have been incautious and unsuspecting where others more accustomed to mercantile affairs might have been mistrustful, there is no evidence that at any time she was possessed of any knowledge of what undoubtedly to a certain extent was an embezzlement on his part, or that, having doubts as to how he obtained the money, she deliberately decided for her own advantage not to make any inquiries to ascertain why instead of paying with checks drawn on a bank account of his own, or in money, he used checks issued by him as treasurer, although if such conduct had been shown then it might be inferred that she ignored significant facts with a purpose to know anything more, and this would have been enough to indicate that suspecting something was wrong, she intended to avoid the effect of the evidence. *Kettlewell* v. *Watson*, 21 Ch. D. 685, 706.

But having taken before maturity for a valuable consideration negotiable paper which was regular upon its face, without knowl-

edge of any defect in the title, even if there might have been some circumstances which would have raised doubts in the mind of a more prudent person, the defendant's right to retain the proceeds of the checks cannot be divested without proof that she knew, or in the face of facts sufficient to put her upon inquiry purposely refrained from knowing of the fraud of Cable ; although if obliged to bring suit upon the checks, after evidence had been introduced in defence that they had been fraudulently issued, the burden would have remained upon her to prove that she was a holder in good faith and for value. *Bill* v. *Stewart*, 156 Mass. 508. *Massachusetts National Bank* v. *Snow*, 187 Mass. 159. *Holden* v. *Phœnix Rattan Co.* 168 Mass. 570. *Tatam* v. *Haslar*, 23 Q. B. D. 345.

While the form of procedure does not change this rule, we fail to find anything in the evidence reported sufficient to modify or overcome the conclusions of fact reached by the trial court, which determined that the defendant had sustained this burden.

*Decree affirmed.*