THOMAS McCORMICK vs. COMMERCIAL BREWING COMPANY.

Suffolk.   March 26, 1918. — May 24, 1918.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Equity Pleading and Practice*, Exceptions, Findings of judge.  *Corporation*, Officers and agents.

In a suit in equity against a corporation for five years' salary as "supervisor" alleged to be due to the plaintiff in accordance with a vote of the directors of the defendant, a material issue was, whether there was an agreement between the plaintiff, who was a director, and the other directors, when the vote was passed five years before, that it should be passed merely to give the plaintiff a standing in a controversy then going on within the corporation, that it was merely a matter of form, and that it should not be binding upon the corporation. There was conflicting evidence upon this issue.  The defendant also contended that the vote was beyond the power of the directors and that it was a fraud upon the stockholders.  The judge who heard the case filed a memorandum containing a ruling that the directors had no power to pass such a vote, a finding that the motive for the vote was to induce the plaintiff to bring certain business to the defendant, that the vote was secret and was concealed from many stockholders and directors and was fraudulent, and this further finding: "Witnesses equal in character and apparently worthy of belief contradict the evidence as to the intention of the vote as testified to by the plaintiff.  I believe their testimony in view of the subsequent conduct of the plaintiff."  *Held,* that this was a finding to the effect that the vote of the directors was passed with an agreement between them and the plaintiff that it should not be binding upon the defendant; and therefore that the suit must be dismissed.

The ruling of the judge that the directors had no power to pass the vote in question was held to have been erroneous; but it *also was held* that, in view of the judge's finding, the error was immaterial.

The question, whether the further findings of the judge as to the secret and fraudulent character of the vote were warranted, also was *held* in view of the finding above described, to have been immaterial.

BILL IN EQUITY, filed in the Superior Court on January 16, 1917, in which the plaintiff averred that the defendant owed him the sum of $49,000 on account of salary; that in a suit in equity of the defendant against him a decree had been entered against him for $14,788 (see 225 Mass. 504); that the defendant did not have assets sufficient to pay its liabilities, and that the plaintiff feared that, if the sum ordered to be paid by the plaintiff to the defendant under the bill in equity above mentioned were paid to the de-

fendant it would pay such sum in full to persons other than the plaintiff and thereby would reduce the sum which the plaintiff might obtain from the defendant upon the claim set up in this suit. The prayers of the bill were that the defendant be enjoined from prosecuting further its suit in equity against him, that the amount owed to the plaintiff by the defendant be established and its payment ordered, and that there be applied on account thereof the amount which the plaintiff was ordered to pay to the defendant in the previous suit.

The suit was heard by *Hardy*, J. The material evidence at the trial and the findings of the judge are described in the opinion. At the close of the evidence, the plaintiff asked for and the judge refused to give the following rulings:

"1. The directors had the power to appoint a supervisor.

"2. The directors had power to fix the salary of a supervisor."

"7. There is no evidence of any fraudulent purpose on the part of the directors in connection with the vote of May 20, 1908.

"8. There is no evidence that the vote of May 20, 1908, was in any way concealed from the stockholders."

"10. The votes at the annual meeting of the stockholders in May, 1913, relating to the salary of McCormick had no effect on the validity of the vote of directors of May 20, 1908, or on the salary earned prior to said annual meeting."

The judge ordered a decree dismissing the bill. The plaintiff alleged exceptions, which, after the death of *Hardy*, J., were allowed by *J. F. Brown*, J.

*F. L. Norton*, for the plaintiff.

*J. A. Curtin*, (*A. S. Allen & H. V. Cunningham* with him,) for the defendant.

CROSBY, J. This is a bill in equity filed in the Superior Court, and is before this court on the plaintiff's exceptions. The presiding judge filed a memorandum which is made a part of the exceptions, and ordered the bill dismissed with costs.

The defendant corporation was organized in 1907 to succeed another corporation known as the Puritan Brewing Company. The plaintiff was the treasurer and a director of the Puritan Brewing Company and he became the treasurer and a director of the defendant corporation at the time of its organization, and remained so until February 12, 1908, when he resigned as treasurer; on May 20, 1908,

he was re-elected and thereafter, on the same day, a vote was passed by the directors that he be engaged as supervisor and paid a salary at the rate of $10,000 a year. He seeks to recover $50,000 for such salary which he claims to be due from May 20, 1908, to May 20, 1913, less $1,000 credited on account on June 21, 1913.

On June 26, 1913, the plaintiff resigned as treasurer and thereafter ceased to take any active part in the business of the defendant. Before this time and when the salary vote was passed, there existed a prolonged and acrimonious controversy among the stockholders, in which the plaintiff participated, over the control of the corporation; and an important issue at the trial was, whether the vote was passed to enable the defendant to pay the plaintiff for services rendered or was designed merely to give him a standing in the controversy in which he was engaged with certain of the stockholders, and with the understanding and agreement between him and the directors that the salary so voted was merely a matter of form and that the vote was not to be valid and binding upon the parties. The plaintiff denied that there was any such agreement and contended and offered evidence that it was a genuine vote and was adopted to compensate him for important and valuable services to be rendered by him to the defendant.

On the other hand, it is the contention of the defendant that it was understood by the directors and the plaintiff that the salary so voted should not be paid, and certain of the directors, including one Doherty (a director who was present at the meeting of the board held on May 20, 1908, when the vote was passed), testified to that effect. Doherty testified that before the meeting the "plaintiff called the witness into the business office and handed him a slip of paper with the vote on it and said, 'I want the company to express their confidence in me, because if I have to go into court with these blackguards I want to show them that the company is willing to pay me ten thousand dollars ($10,000) a year, but I will never take a cent of it, because the company is in such financial condition they could n't pay me anyhow, and I simply want it put on there for court purposes only.' The witness told the plaintiff that if the plaintiff would repeat that to the board, the witness would offer the vote. The plaintiff did so and the vote was passed without discussion. All had absolute confidence in the plaintiff. The witness first learned that the plaintiff was

going to collect on the salary about six (6) or eight (8) months after plaintiff left in 1913. The plaintiff never made a claim for money on account of salary to the knowledge of the witness between 1908 and 1913."

There was evidence that there was no need for the appointment of a supervisor and that the services rendered by the plaintiff were no greater than as treasurer of the corporation he would properly be expected to perform; also, that the plaintiff controlled certain trade which purchased the defendant's products and which he had on previous occasions taken away from the defendant.

In the memorandum filed by the presiding judge he made among other findings of fact the following: "I am of opinion that the directors had no right or power to pass such a vote under the by-laws in the absence of authority from the stockholders, and so rule. I am satisfied from the evidence of the meagre discussion that was had at the meeting and before the same, about the intended action, that the motive of the vote was to induce McCormick to bring back to the defendant company the trade he controlled as a consumer which he had previously diverted. As I find that other stockholders and directors had dealings with the company of a similar character as consumers, and as this vote was secret in character and concealed from many of the stockholders and directors, I find the vote was fraudulent in its intention so far as it was in effect a premium to be given to McCormick for his future purchases of the product of the defendant. Witnesses equal in character and apparently worthy of belief contradict the evidence as to the intention of the vote as testified to by the plaintiff. I believe their testimony in view of the subsequent conduct of the plaintiff. I find he made no claim for payment of such salary for several years; that because of the action of the auditor, as a matter of proper bookkeeping, it was first referred to in a report of the treasurer in 1912 and was then indefinite as to the salary of the treasurer unpaid, giving no definite amount. When it was found and understood by the directors and stockholders that such claim was made, it was repudiated. I find as a fact that during the five years the plaintiff apparently performed no greater services than any treasurer would be expected to perform."

The plaintiff concedes that there was evidence which warranted

a finding that the vote to pay the plaintiff a salary "was never intended to be valid and binding upon the parties, and that the directors intended it as a mere form for use against a few dissatisfied stockholders who had brought a bill in equity against the defendant and the plaintiff seeking to compel the plaintiff to pay the defendant money, hereinafter called the Kenney suit." He concedes that if such a finding had been made by the judge, his exceptions would be immaterial. But he strenuously contends that no such finding was made. That the other findings, including the finding that the vote was secret in character and concealed from many of the stockholders and directors and fraudulent "so far as it was in effect a premium to be given to McCormick for his future purchases of the product of the defendant," were not warranted by the evidence; and he argues, that "this finding includes by necessary inference a finding that the directors intended the vote to be binding and the salary paid, because if not paid, it could not be a premium to the plaintiff for his future purchases."

We cannot agree with this reasoning, and are of opinion that it is based upon a misconception of the findings recited in the memorandum. The judge finds that the motive of the vote was to induce the plaintiff to bring back to the defendant company the trade which he had previously diverted. In other words, the directors passed the vote to induce the plaintiff to bring trade to the defendant. Whatever motive actuated the directors in passing the vote, the question remains whether any salary was intended to be paid under it. Upon this question the court has expressly found that he believed the witnesses for the defendant, some of whom testified in substance that it was not thereby intended that any salary should be paid under it, but that it was expressly agreed between the plaintiff and the directors that it was adopted as a mere form without any validity or binding force. Plainly this finding is decisive and must be held to finally determine the rights of the parties.

We are of the opinion that, under the by-laws, it was within the power of the directors, if they acted in good faith, to appoint a supervisor and fix his salary without the approval of the stockholders and that the ruling of the judge to the contrary was error, *Fillebrown* v. *Hayward,* 190 Mass. 472; but in view of the finding

that the vote was not intended to be effective, the ruling is immaterial. For the same reason the finding that the vote "was secret in character and concealed from many of the stockholders and directors, . . . was fraudulent in its intention so far as it was in effect a premium to be given to McCormick for his future purchases of the product of the defendant," and the refusal to give the rulings requested, have become immaterial. The exception to the exclusion of evidence offered to show that the credit of the defendant was affected after the plaintiff ceased active management of the business, also is immaterial in view of the finding above referred to.

· It follows that the exceptions must be overruled and a decree is to be entered in the Superior Court dismissing the bill with costs.

*Ordered accordingly.*